Judge EFFRON
delivered the opinion of the Court.
A general court-martial composed of officer members convicted appellant, contrary to her pleas, of willful dereliction of duty, making a false official statement, wrongful possession of a controlled substance, and larceny, in violation of Articles 92, 107, 112a, and 121, Uniform Code of Military Justice, 10 USC §§ 892, 907, 912a, and 921, respectively. She was sentenced to dismissal. The convening authority approved the sentence as adjudged, and the Court of Criminal Appeals affirmed the findings and sentence in a published opinion. 53 MJ 711 (2000).
On appellant’s petition, we granted review of the following issues:
I. WHETHER THE MILITARY JUDGE’S DECISION TO NOT DISQUALIFY HIMSELF FROM APPELLANT’S COURT-MARTIAL SHOULD BE REVIEWED ON APPEAL DE NOVO OR AS AN ABUSE OF DISCRETION.
II. WHETHER APPELLANT’S DUE PROCESS RIGHTS TO A FAIR TRIAL UNDER THE CONSTITUTION AND RECUSAL STATUTES WERE VIOLATED WHEN HER CASE WAS HEARD, OVER HER OBJECTION, BY A MILITARY JUDGE WHOSE SOCIAL CONTACT WITH TRIAL COUNSEL BEFORE AND DURING APPELLANT’S COURT-MARTIAL OCCURRED UNDER CIRCUMSTANCES THAT WOULD CAUSE A REASONABLE PERSON WITH KNOWLEDGE OF ALL THE APPLICABLE FACTS TO HAVE A REASONABLE DOUBT REGARDING THE MILITARY JUDGE’S IMPARTIALITY AND WHETHER APPELLANT RECEIVED A FAIR TRIAL.
III. WHETHER THE AIR FORCE COURT ERRED BY FAILING TO DISMISS CHARGE II AND ITS SPECIFICATION (WRONGFUL POSSESSION OF PERCOCET TABLETS) AND CHARGE III AND ITS SPECIFICATION (WILLFUL DERELICTION OF DUTY BY OBTAINING PERCOCET TABLETS WITHOUT AUTHORIZATION) AS AN UNREASONABLE MULTIPLICATION OF CHARGES AFTER APPELLANT WAS CONVICTED OF CHARGE I AND ITS SPECIFICATION (LARCENY OF THE SAME PERCOCET TABLETS) WHEN NO EVIDENCE INDICATED THAT APPELLANT POSSESSED THE PERCOCET TABLETS AFTER SHE SUPPOSEDLY STOLE THEM BY OBTAINING THEM WITHOUT PROPER AUTHORIZATION.
For the reasons set forth below, we affirm.
I. DISQUALIFICATION OF THE MILITARY JUDGE
A. BACKGROUND
Appellant’s trial took place on various dates between June 22 and July 8, 1998. By *89 Thursday, July 2, the parties concluded their presentations on findings, and completed their discussion of instructions on findings with the military judge. At the close of the proceedings on July 2, the court-martial recessed through the Fourth of July weekend and resumed on Monday, July 6.
On Friday, July 3, the military judge attended a party to which all attorneys in the judicial circuit had been invited. The invitation, posted on June 17, invited the attorneys to a party “To Promote Peace, Love, and Harmony Among Trial & Defense Counsel in the Greater San Antonio Metropolitan Area. Yeah, Right!” 53 MJ at 712. The party, which was at the home of the trial counsel in this case, also served as an informal farewell for trial counsel and his wife, who planned to leave the area by the end of the month. Attendance at the party was estimated to peak at 40 people, including many counsel and friends of trial counsel’s wife. Several defense counsel attended. Appellant’s defense counsel declined to attend in view of a circuit defense counsel policy prohibiting social activities with opposing counsel during an ongoing trial.
The military judge and his wife attended the party for about 2 hours and spoke to several judge advocates. The conversation did not extend to appellant’s court-martial except for a comment by the military judge that the trial had lasted longer than anticipated. During one of these conversations, the military judge was invited to play tennis the next morning with a couple preparing for a doubles tournament. At the suggestion of another guest, the military judge agreed to have trial counsel as his doubles partner.
On Saturday, July 4, the military judge and trial counsel played a practice match against the couple that was preparing for the tournament. The match, which lasted less than 2 hours, included brief conversations about tennis and other social subjects. Appellant’s court-martial was not discussed. On Monday morning, July 6, the court-martial resumed with closing arguments and instructions on findings. That afternoon, trial defense counsel learned of the judge’s participation in the social and athletic events of the weekend from another defense counsel who had attended the party. The following day, while the members deliberated on findings, the defense moved to disqualify the military judge and also moved for a mistrial, citing the events of the weekend.
During an Article 39(a), UCMJ, 10 USC § 839(a), session, defense counsel argued that the judge’s participation in social and athletic events with trial counsel in the midst of the court-martial created an “appearance of impropriety” requiring disqualification under RCM 902(a), Manual for Courts-Martial, United States (2000 ed.).[1] Defense counsel stated that she knew the judge had played tennis with trial counsel in the past, but said that the timing of the party and tennis game made a difference in the present case.
The military judge disclosed the facts and circumstances concerning his attendance at the party and tennis match. He stated that he was an avid tennis player who would play “with anyone” and would never discuss cases during matches. He also observed that while he did not “believe” that his actions had been “inappropriate,” he would “keep an open mind on the subject.” He advised the parties that they could submit briefs on the matter, and he would defer a final ruling.
About an hour after the Article 39(a) session on the motion had ended, the members completed their deliberations, finding appellant guilty of the charged offenses. Shortly after findings were announced, the military judge stated that he had “consulted with other judges” and was certain that the socializing did not raise a reasonable doubt about his impartiality. He added that he would prepare written findings and issue a ruling after the trial had been completed. Subsequently, a post-trial session was held where defense counsel submitted a written brief, and the matter was discussed further. After this session, the Government filed a reply.
*90 ■ On October 30,1998, nearly 4 months after the sentence was adjudged, the military judge denied the defense motion for a mistrial in a 14-page written ruling attached to the authenticated record. In addition to reiterating the facts concerning his actions during trial, the military judge criticized defense counsel for having a discussion with appellant about the military judge’s out-of-court activities. The military judge also used the occasion to set forth his personal views on a wide range of subjects, including standards of conduct, social norms, attitudes of counsel, appellate courts, trends in military law, and military life in general. With respect to his interaction with trial counsel, the military judge concluded that a reasonable person would not infer a personal relationship or other impact on his impartiality during trial as a result of the weekend’s activities.
B. DISQUALIFICATION UNDER RCM 902(a)
“An accused has a constitutional right to an impartial judge.” United States v. Wright, 52 MJ 136, 140 (1999), citing Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The neutrality required by constitutional due process
helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. At the same time, it preserves both the appearance and reality of fairness, “generating the feeling, so important to a popular government, that justice has been done,” by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.
Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (citations omitted).
Article 26(d), UCMJ, 10 USC § 826(d), provides that “[n]o person is eligible to act as military judge in a court-martial if he [or she] is the accuser or a witness for the prosecution or has acted as investigating officer or a counsel in the same case.” The President has supplemented Article 26 with RCM 902, “Disqualification of military judge,” which is based on the statute on disqualification of federal judges in civilian proceedings, 28 USC § 455. See Analysis of Rules for Courts-Martial, Manual, supra at A21-50. RCM 902(a) governs appearance of bias, and RCM 902(b) governs specific disqualifying circumstances. The present appeal concerns RCM 902(a), which invokes the following provisions in 28 USC § 455(a):
Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
This section was enacted to maintain public confidence in the judicial system by avoiding “even the appearance of partiality.” See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The appearance standard helps to enhance confidence in the fairness of the proceedings because in matters of bias, the line between appearance and reality is often barely discernible. See Richard E. Flamm, Judicial Disqualification — Recusal and Disqualification of Judges § 5.4.1 (1996); Liteky v. United States, 510 U.S. 540, 565, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)(Kennedy, J., concurring in the judgment)(“In matters of ethics, appearance and reality often converge as one.”).
“The decision of a military judge” on the issue of recusal “is reviewed on appeal for abuse of discretion.” United States v. Norfleet, 53 MJ 262, 270 (2000). See S. Childress & M. Davis, Federal Standards of Review § 12.05 n. 8 (3rd ed.1999)(listing circuits which apply the abuse of discretion standard). The Seventh Circuit is the only federal circuit to apply a de novo standard and appellant asks us to do likewise.[2] Appel *91 lant has not persuaded us that there is any reason based in law or policy to depart from precedent on this point and adopt the minority position on the standard of review.
In the course of reviewing the military judge’s ruling under RCM 902(a) for abuse of discretion, we consider the facts and circumstances under an objective standard. "Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge’s ‘impartiality might reasonably be questioned’ is a basis for the judge’s disqualification.” United States v. Kincheloe, 14 MJ 40, 50 (CMA 1982), quoting E. Thode, Reporter’s Notes to Code of Judicial Conduct 60 (1973); Wright, 52 MJ at 141.
Our Court has emphasized that the appearance standard does not require judges to live in an environment sealed off from the outside world. For example, in the context of addressing relationships between the military judge and participants in a trial, we have noted:
“Judges have broad experiences and a wide array of backgrounds that are likely to develop ties with other attorneys, law firms, and agencies.” Personal relationships between members of the judiciary and witnesses or other participants in the court-martial process do not necessarily require disqualification.
Norfleet, 53 MJ at 269-70, quoting Wright, 52 MJ at 141. See also United States v. Hamilton, 41 MJ 32, 38-39 (CMA 1994).
The interplay of social and professional relationships in the armed forces poses particular challenges for the military judiciary. Both before and after service in the judiciary, a judge advocate typically will serve in a variety of assignments as a staff attorney and supervisor. Such assignments normally include duties both within and outside the field of criminal law. In the course of such assignments, the officer is likely to develop numerous friendships as well as patterns of social activity. These relationships are nurtured by the military’s emphasis on a shared mission and unit cohesion, as well as traditions and customs concerning personal, social, and professional relationships that transcend normal duty hours. When assigned to the judiciary, the military judge frequently will find himself or herself in close and continuing contact with judge advocates outside the courtroom. It is not unusual for judges and counsel to be invited to the same professional and social functions. An additional challenge in the military environment is the grade structure. Members of the judiciary typically outrank counsel and may have served in a direct superior-subordinate relation to counsel in the past — or may be placed in such a relationship in the future. In light of these circumstances, members of the military judiciary must be particularly sensitive to applicable standards of judicial conduct.
The military services have promulgated regulations that provide guidance to military judges as they seek to maintain both the reality and appearance of impartiality in the face of these circumstances. The Air Force, for example, has established the Uniform Code of Judicial Conduct for Military Trial and Appellate Judges to regulate judicial conduct. Canon 4A(1) admonishes judges to conduct “extra-judicial activities so that they do not ... cast reasonable doubt on the judge’s capacity to act impartially as a judge[.]” The Code of Conduct for United States Judges, applicable to federal judges and specifically adopted by this Court, contains similar provisions regarding the maintenance of impartiality, dignity, and decorum in proceedings. See, e.g., Canon 2A commentary, Code of Conduct for United States Judges (1999) (“A judge must expect to be the subject of constant public scrutiny ... [and] must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.”)
The Air Force standards, which are patterned after the guidance applicable to civilian judges, consist of general principles rather than detailed situational restrictions. Like their civilian counterparts, these regulations do not include an absolute ban on contact between judges and counsel outside the courtroom.
A judge may be subject to administrative sanctions for conduct inconsistent *92 with these standards. See RCM 109(a). As in civilian life, activity inconsistent with standards of judicial conduct does not mandate recusal unless it rises to the level of a violation of applicable disqualification standards. See RCM 902.
A determination that the judge should have disqualified himself or herself does not end appellate review. Neither RCM 902(a) nor applicable federal civilian standards mandate a “particular remedy” for situations in which an appellate court determines that the military judge should have removed himself or herself from a case. See, e.g., Liljeberg, supra at 862, 108 S.Ct. 2194 (“There need not be a draconian remedy for every violation of § 455(a).”) In Liljeberg, the Court established a three-part test for determining whether reversal of a conviction or decision is warranted as a remedy when a judge has erred in failing to recognize that disqualification was required because the judge’s impartiality might reasonably be questioned:
We conclude that ... it is appropriate to consider [1] the risk of injustice to the parties in the particular case, [2] the risk that denial of relief will produce injustice in other eases, and [3] the risk of undermining the public’s confidence in the judicial process. We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice.
Id. at 864, 108 S.Ct. 2194 (internal quotation marks omitted).
C. DISCUSSION
Appellant contends that the actions of the military judge violated applicable standards of judicial conduct and that the military judge should have disqualified himself under RCM 902. The Government takes the position that even if the military judge’s actions violated applicable standards of conduct, the military judge did not abuse his discretion in rejecting the defense motion to recuse himself under the particular facts of this case. In the alternative, the Government argues that even if the military judge erred, the error was not prejudicial.
In its brief before our Court, the Government makes it clear that “the United States neither expects nor asks this Court to put its stamp of approval” on the military judge’s actions, and we shall not do so. Instead, we shall assume, without deciding, that the military judge should have recused himself and ask whether his failure to do so requires reversal under the standards set forth by the Supreme Court in Liljeberg.
The first Liljeberg factor requires consideration of “the risk of injustice to the parties.” In the present case, any risk of injustice was considerably diminished because events giving rise to the disqualification motion occurred near the end of trial, after the presentation of evidence and discussion of instructions on findings. The military judge was not called upon to exercise discretion on any matter of significance concerning findings after that point. Moreover, because appellant was sentenced by a panel, the military judge’s subsequent participation in the trial was limited to instructions and rulings during the sentencing proceedings. His actions in that regard were few in number and not adverse to appellant.[3] We also note that appellant received one of the sentence alternatives requested by defense counsel and that the members rejected the more severe punishment argued for by trial counsel. The suggestion in his written opinion, issued 4 months after trial, that defense counsel should not have discussed the military judge’s conduct with appellant, is erroneous, but does not establish grounds for reasonably questioning the military judge’s impartiality during trial. In light of these factors, we conclude that any concerns about the impartiality of the military judge did not pose a “risk of injustice to the parties.”
The second Liljeberg factor concerns “the risk that denial of relief will produce injustice in other eases.” We note again that the Government has not asked us to endorse the *93 military judge’s conduct or his written opinion. Based on our collective experience and our review of thousands of records of trial, we note that as a general matter, members of the military judiciary, like their civilian counterparts, are highly sensitive to the problems posed by out-of-court contacts with counsel for one party in the midst of litigation. It is not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future.
The third Liljeberg factor considers “the risk of undermining the public’s confidence in the judicial process.” The present case does not involve intimate personal relationships, extensive interaction, conduct bearing on the merits of the proceedings, or other factors that could undermine the basic fairness of the judicial process. As we noted in connection with the first factor, the conduct at issue came late in the trial, well after the military judge had completed his essential rulings on matters that divided the parties in this litigation. Under those circumstances, we conclude that the reversal of appellant’s conviction is not required to avoid undermining the public’s confidence in the judicial process.
II. UNREASONABLE MULTIPLICATION OP CHARGES
Appellant also claims that the lower court erred by failing to dismiss Charge II (wrongful possession of percocet) and Charge III (willful dereliction of duty by obtaining percoeet without authorization), as an unreasonable multiplication of charges after appellant was convicted of the larceny of the percocet. Appellant raised this issue for the first time on appeal at the court below.
The Discussion accompanying RCM 307(c)(4) explains that “[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.” On appeal, the issue of unreasonable multiplication of charges involves the duty of the Courts of Criminal Appeals to “affirm only such findings of guilty, and the sentence ... as it ... determines, on the basis of the entire record, should be approved.” Art. 66(e), UCMJ, 10 USC § 866(e). This highly discretionary power includes the power to determine that a claim of unreasonable multiplication of charges has been waived or forfeited when not raised at trial. The lower court concluded that appellant forfeited this issue by not raising it at trial, and appellant has not demonstrated any specific circumstances that would lead us to conclude that the lower court abused its considerable discretion in the present case.
III. CONCLUSION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. Defense counsel also alleged that eye contact between the judge and trial counsel during trial constituted "nonverbal” communication that violated RCM 902(a), but appellant has not pursued that basis for disqualification on appeal.

. The Seventh Circuit reviews § 455(a) issues de novo. In re Hatcher, 150 F.3d 631, 637 (7th Cir.1998). The Eighth Circuit has questioned what the proper standard is in that circuit, noting that prior decisions used de novo or abuse of discretion standards. Holloway v. United States, 960 F.2d 1348, 1351 n. 8 (8th Cir.1992).

. The defense did not challenge any of the Government’s evidence at sentencing and the two rulings made by the judge favored appellant by excluding Government evidence or modes of argument.