UNITED STATES, Appellee

v.

Christopher A. GREATTING, Staff Sergeant
U.S. Marine Corps, Appellant

No. 07-0575

Crim. App. No. 200401945

United States Court of Appeals for the Armed Forces

Argued January 16, 2008

Decided May 6, 2008

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER and RYAN, JJ., joined.  STUCKY, J.,
filed a separate dissenting opinion.

Counsel

For Appellant:  Lieutenant Commander Kristina B. Reeves, JAGC,
USN (argued); Lieutenant Commander M. Eric Eversole, JAGC, USN
(on brief).

For Appellee:  Major Brian K. Keller, USMC (argued); Commander
Paul C. LeBlanc, JAGC, USN, and Lieutenant Commander Jessica M.
Hudson, JAGC, USN.

Military Judge:  R. S. Chester


**This opinion is subject to revision before final publication.**

United States v. Greatting, No. 07-0575/MC

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Christopher A. Greatting was the staff noncommissioned officer-in-charge of the K-9 Military Working Dog Section (K-9 Section) at Camp Pendleton. Consistent with his pleas at a general court-martial, Greatting was convicted of a number of charges arising from his supervision of the K-9 Section, as well as wrongful use of marijuana. At trial the defense moved for the military judge's recusal because he had presided over four companion cases and had privately discussed certain aspects of those cases with the convening authority's staff judge advocate (SJA). The motion was denied. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence. United States v. Greatting, No. NMCCA 200401945, 2007 CCA LEXIS 108, at *20, 2007 WL 1709533, at *8 (N-M. Ct. Crim. App. Mar. 29, 2007). We granted review to consider whether the military judge's decision not to recuse himself was an abuse of discretion. 65 M.J. 345 (C.A.A.F. 2007).

"[A] military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Rule for Courts-Martial (R.C.M.) 902(a). Presiding over companion cases does not alone constitute grounds for recusal. United States v. Lewis, 6 M.J. 43, 45 (C.M.A. 1978). However, the ex parte discussion that

United States v. Greatting, No. 07-0575/MC

took place between the military judge and the SJA prior to Greatting's court-martial and while clemency matters and appeals in the companion cases were pending would lead a reasonable person to question the military judge's impartiality. Considering the factors articulated by the Supreme Court in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988), we conclude that Greatting is entitled to relief. Accordingly, we reverse the Court of Criminal Appeals, set aside the findings and sentence, and authorize a rehearing.[1]

## BACKGROUND

As the staff noncomissioned officer in charge of the K-9 Section at Camp Pendleton, Greatting was responsible for ensuring that the handlers and the dogs were properly trained, that there were proper records to document the training, and that the kennel was run in accordance with applicable regulations and orders. Greatting and his subordinates worked together to falsify paperwork that certified the dogs had completed aspects of a training regimen that were never undertaken.

---

[1] We also granted review as to whether the Court of Criminal Appeals erred by failing to afford meaningful relief after determining that Greatting was prejudiced by the denial of his due process right to a timely review and appeal. 65 M.J. 345 (C.A.A.F. 2007). In light of our resolution of this case on the recusal issue, we decline to reach that issue.

In addition, with Greatting's knowledge and consent, some members of the unit boarded unauthorized non-military dogs at the base kennel. One of these non-military dogs, a trained attack dog, was seriously injured when the dog handlers tried to control him. Due to the dog's injuries, Greatting's subordinates were required to put the dog down. Greatting subsequently lied to law enforcement agents about the dog, reporting that the dog was fine after he knew the dog had been killed.

Four subordinate Marines in the K-9 Section were also convicted, consistent with their pleas, of charges arising from this conduct. All of the companion cases were heard before Judge C. Staff Sergeant Ruben Cadriel was convicted on April 16, 2003, at a general court-martial. In addition to charges arising from the operation of the K-9 Section, Cadriel was also convicted of assault and disobeying a superior commissioned officer. He was sentenced by Judge C to a bad-conduct discharge, confinement for four years, and reduction to E-1. On October 4, 2004, the convening authority approved the sentence, but suspended confinement in excess of seventy-five days pursuant to Cadriel's pretrial agreement.

The other three Marines were tried by special court-martial. Corporal Aaron L. Hutchings was convicted on July 1, 2003, Corporal Jamie A. Marmolejo on July 7, 2003, and Sergeant

4

Christian M. Blue on September 10, 2003. Hutchings was sentenced to reduction to E-3. Marmolejo was sentenced to reduction to E-1 and hard labor without confinement for three months. Blue was sentenced to reduction to E-2 and confinement for seventy-five days. The convening authority approved Hutchings's sentence on October 31, 2003. On February 6, 2004, the convening authority approved only the reduction in Marmolejo's case. Blue's sentence was approved on May 28, 2004.

Greatting's court-martial was convened on June 5, 2003 and he was arraigned on August 11, 2003. By the date of Greatting's arraignment, the court-martial proceedings for Cadriel, Hutchings, and Marmolejo were completed, while Blue's court-martial was still pending. The convening authority had yet to take action in any of the cases.

At Greatting's arraignment, Judge C informed the parties:

> I have detailed myself to this court-martial in my capacity as the Circuit Military Judge for the Sierra Judicial Circuit. . . .

> I will not be a witness for either side in this case, and I am not aware of any matters which I believe may be a grounds for challenge.

> However, I would note for the record that I did preside over the cases of United States vs. Cadriel, Hutchings, and Marmolejo, which are all, I believe, related cases to this case.

Judge C asked if either side wanted to conduct voir dire or challenge his participation. Greatting's defense counsel requested the opportunity to reserve both "given the fact that

5

we do not know who is going to be the ultimate military judge, although you do have the assignment authority." Judge C indicated that it was his intention to preside over the case but he would allow the defense to revisit voir dire and challenge at a later time. Greatting also reserved entering pleas at that time.

Court-martial proceedings for the last of Greatting's subordinates, Blue, concluded on September 10, 2003. About two weeks later, on September 23, 2003, Greatting signed a pretrial agreement, which was approved by the convening authority on September 30, 2003. The pretrial agreement provided, in part, that confinement in excess of fifteen months would be suspended, as would any forfeitures. Automatic forfeitures would be deferred for the benefit of Greatting's wife.

Greatting's court-martial reconvened on October 30, 2003. Prior to Greatting entering his pleas, his defense counsel requested the opportunity to conduct voir dire of the military judge. Judge C acknowledged that the underlying events in this case were the same as the events in the four companion cases in which he had presided. While he agreed that the companion cases dealt with the purported role played by Greatting in the various offenses, he stated that he could not recall the specifics of each case or whether each case touched upon Greatting.

Judge C went on to state:

If I had to say, my recollection was that Staff Sergeant Cadriel had a greater involvement in what was going on, although some of the charges which aren't here today, the accused is not going to plead guilty to today, involved drinking in the work spaces; and I believe Staff Sergeant Greatting was implicated in those cases that involved that allegation and was implicated in those as having approved that conduct as well as the falsification of certain records, the failure to train dogs and test them to certain standards.

The defense counsel then asked Judge C whether he had discussed these cases with anyone other than a fellow military judge. Judge C responded that he had, as it was his practice to conduct post-trial critiques with counsel. He also stated that he talked to "the staff judge advocate and probably his deputy[,] not about [Greatting's] case other than that it was coming, they mentioned it was coming, but about the other cases." The military judge recounted his interaction with the SJA as follows:

With respect to Cadriel, it was that I thought they sold the case too low given his culpability, his admissions in the Court, given the severity of his conduct, and the repercussions of his conduct on the junior Marines that were involved in the section, the security of this installation.

. . . .

I think I also mentioned following the other, as you indicated three cases and I think that's right, the other three cases, that I felt given the level of culpability of Cadriel versus the younger Marines who were perhaps more guided or motivated by misguided loyalty to the two staff NCO's that they worked for, I questioned the appropriateness of their being at a special court-martial.

7

United States v. Greatting, No. 07-0575/MC

Judge C stated that he would not second-guess or presuppose what the pretrial agreement provided for in Greatting's case and that he had no preconceived ideas of what the sentence should be.  He said that he believed he would be able to put the other cases out of his mind and judge the case on the facts introduced in the proceeding before him.  Following voir dire, the defense counsel moved for Judge C to recuse himself on the basis of implied bias under R.C.M. 902(a).  The motion was denied.

After Judge C accepted Greatting's pleas and conducted a sentencing hearing, he sentenced Greatting to six months confinement, reduction to E-1, and a bad-conduct discharge.  The confinement limitation of fifteen months in the pretrial agreement was therefore not triggered.  The convening authority approved the sentence but reduced confinement to ninety days as an act of clemency.

On appeal to the Court of Criminal Appeals Greatting argued, inter alia, that the military judge abused his discretion when he denied the motion to recuse himself.  The lower court held that the military judge was not disqualified and did not abuse his discretion by presiding over the case. Greatting, 2007 CCA LEXIS 108, at *9-*11, 2007 WL 1709533, at *4.

DISCUSSION

Before this court, Greatting renews his argument that Judge C abused his discretion in denying the motion to recuse himself. Noting that Judge C presided over four companion cases and provided advice to the SJA regarding the proper forums and sentences in those cases, Greatting contends that Judge C's activities created the appearance that the military judge had become an advocate for the Government. As such, Greatting argues, Judge C's actions created a reasonable question regarding his impartiality and he should have recused himself on the grounds of implied bias under R.C.M. 902(a).

The Government responds that there was no implied bias and characterizes Judge C's discussion with the SJA as a "personal and private conversation between two military officers regarding already completed courts-martial." The Government goes on to contend that there was no risk to fairness or public perception because Greatting was the last of the coconspirators to enter pleas of guilty and sign a pretrial agreement, his adjudged sentence was far less than the next most culpable member of the conspiracy, and he received clemency resulting in only ninety days of confinement.

"An accused has a constitutional right to an impartial judge." United States v. Butcher, 56 M.J. 87, 90 (C.A.A.F. 2001) (citation and quotation marks omitted). R.C.M. 902(a)

9

provides that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."  In reviewing a military judge's ruling on a recusal motion, we consider the facts and circumstances under an objective standard.  Butcher, 56 M.J. at 91.  The test is whether there was "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned."  Id. (citation and quotation marks omitted).

It has long been recognized that merely presiding over a companion case does not constitute grounds for disqualification.  See Lewis, 6 M.J. at 45; United States v. Jarvis, 22 C.M.A. 260, 262, 46 C.M.R. 260, 262 (1973).  Were that the sole issue before us, we would have no hesitation in affirming the action of the Court of Criminal Appeals.  In this case, however, we are concerned about Judge C's decision to provide an ex parte critique to the SJA "and probably his deputy" about the overall prosecution of the K-9 Section defendants at a time when court-martial proceedings had not yet commenced in one of the cases, and where clemency matters and appeals had not been completed in any of the cases.

The Uniform Code Military Justice (UCMJ) and the Manual for Courts-Martial, United States give the convening authority significant power and discretion in proceedings related to

10

trials by courts-martial.  See Article 60, UCMJ, 10 U.S.C. § 860

(2000); R.C.M. 407; R.C.M. 705; R.C.M. 1107.  The convening

authority's SJA is responsible for providing critical legal

advice on these issues.  Article 60(d), UCMJ; R.C.M. 105(a);

R.C.M. 406; R.C.M. 1106; R.C.M. 1113(c)(1)(B).  We have

previously held that the nature of relationships between a

military judge and non-judge members of the judge advocate

community requires increased vigilance to ensure propriety:

> The interplay of social and professional
> relationships in the armed forces poses particular
> challenges for the military judiciary.  Both before
> and after service in the judiciary, a judge advocate
> typically will serve in a variety of assignments as a
> staff attorney and supervisor.  Such assignments
> normally include duties both within and outside the
> field of criminal law.  In the course of such
> assignments, the officer is likely to develop numerous
> friendships as well as patterns of societal activity.
> . . .  When assigned to the judiciary, the military
> judge frequently will find himself or herself in close
> and continuing contact with judge advocates outside
> the courtroom. . . .  In light of these [and other]
> circumstances, members of the military judiciary must
> be particularly sensitive to applicable standards of
> judicial conduct.

Butcher, 56 M.J. at 91.

We have also recognized that:

> Ex parte contact with counsel does not
> necessitate recusal under R.C.M. 902(a), particularly
> if the record shows that the communication did not
> involve substantive issues or evidence favoritism for
> one side.  However, an ex parte communication which
> might have the effect or give the appearance of
> granting undue advantage to one party cannot be
> condoned.

11

United States v. Greatting, No. 07-0575/MC

United States v. Quintanilla, 56 M.J. 37, 79 (C.A.A.F. 2001)

(citation and quotation marks omitted).  We believe the same

holds true when considering the propriety of ex parte contact

between a military judge and an SJA.

Here, a judicial officer provided case-specific criticism

to the convening authority's SJA and "probably his deputy" about

companion cases.  While clearly aware that Greatting's case was

coming to trial, Judge C told the SJA that the convening

authority had sold Cadriel's case "too low" and mentioned that

the younger marines "were perhaps more guided or motivated by

misguided loyalty to the two staff NCO's that they worked for."

He provided this criticism in an ex parte conversation with the

very individual responsible for advising the convening authority

on all aspects of the K-9 Section cases, including the terms of

pretrial agreements and clemency recommendations.  And he did so

before clemency matters had been resolved in any of the

companion cases and possibly before the pretrial agreement in

Greatting's case had been finalized.  Also, after commenting on

the potential culpability of Greatting as one of the "two staff

NCOs", he later assigned himself Greatting's case.

In the circumstances of this case, we conclude that the

military judge's ex parte discussion with the SJA would lead a

reasonable person, knowing all the circumstances, to the

conclusion that the military judge's impartiality might

12

reasonably be questioned.  We hold that he was obliged to recuse himself under R.C.M. 902(a) and that he abused his discretion by not doing so.[2]

Having found that the military judge abused his discretion by denying the recusal motion, we next consider whether relief is warranted.  In making this determination we have relied on the factors set forth in Liljeberg, a case in which the Supreme Court considered whether reversal was warranted where a judge had erroneously failed to recuse himself under 28 U.S.C. § 455(a), the civilian equivalent of R.C.M. 910(a).  486 U.S. at 858-64; see Butcher, 56 M.J. at 92; see also Quintanilla, 56 M.J. at 80-81.  These three factors are "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Liljeberg, 486 U.S. at 864.

Greatting argues that relief is warranted because the conversation had a detrimental impact on his pretrial agreement to the extent it capped the maximum period of confinement at

---

[2] Our consideration of this case is limited to the issue of implied bias under R.C.M. 902(a).  We need not and do not reach questions of actual bias.  Contrary to the suggestion of the dissent, therefore, our finding of error does not suggest that Judge C was specifically biased toward a harsh sentence in this case.  United States v. Greatting, ___ M.J.___ (3) (C.A.A.F. 2008) (Stucky, J., dissenting).  Nor have we assumed that Judge C approached the case with any sort of vengeful agenda.  Id. at ___ (2-3).

fifteen months, well beyond the seventy-five day maximum in Cadriel's pretrial agreement.[3]  Greatting also argues that public confidence and future accused are at risk if the court condones a system that allows a military judge to interfere in the referral process and a convening authority's decision to negotiate a pretrial agreement.

In response, the Government contends that there is no risk of injustice to Greatting where his adjudged sentence of six months was lower than the confinement limitation of fifteen months provided for in the pretrial agreement, and where the military judge overruled Government objections to defense sentencing witnesses.  The Government also contends that the fact that Greatting was the last to enter a pretrial agreement explains the disparity between the confinement term in his agreement and the confinement term in the pretrial agreements of his codefendants.  The Government maintains that "[n]o reasonable person, apprised of the facts in this case and the companion cases, would believe that the judicial process did not work where [Greatting] pled guilty, presented sentencing

---

[3] Greatting alleged in his brief that the pretrial agreement in each of the companion cases limited confinement to seventy-five days while Greatting's agreement extended to fifteen months. Greatting does not point to evidence in the record to support this assertion.  The convening authority's discussion of the companion cases in Greatting's court-martial order supports this assertion only as to Cadriel.

evidence, and ultimately received an approved and executed sentence extending only to 90 days and a bad-conduct discharge."

Focusing first on fairness to the parties, we conclude that the conversation between Judge C and the SJA about the sentence limitations in Cadriel's pretrial agreement could be seen to have had a negative impact on the terms of Greatting's pretrial agreement. The record does not make clear exactly when the conversation took place, but it is apparent that the conversation could have occurred before the convening authority agreed to the terms of Greatting's pretrial agreement. While other factors may well have contributed to the disparity between the two confinement caps, the record establishes a risk that the military judge's conversation with the SJA adversely affected Greatting's position in pretrial negotiations.

As to the second factor, risk that denial of relief will produce injustice in other cases, we stated in Butcher that under the facts of that case it was "not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future." 56 M.J. at 93. Nevertheless, we do not believe that considerations under this factor caution us against awarding relief. As stated in Liljeberg, "providing relief in cases such as this will not produce injustice in other cases; to the contrary, [enforcing R.C.M. 902(a)] may prevent a

15

substantive injustice in some future case by encouraging a [military] judge . . . to more carefully examine possible grounds for disqualification . . . ."  486 U.S. at 868.

We now turn to the third factor, whether the circumstances of this case create the risk of undermining the public's confidence in the judicial process.  In an ex parte conversation with the SJA, Judge C criticized the manner in which the convening authority was handling the K-9 Section defendants, while Greatting's case was pending and before the convening authority had considered clemency in any of the cases.  Such interference by a judicial officer into matters entirely within the discretion of the convening authority is not only inappropriate, it gives the appearance that Judge C was aligned with the Government.[4]  This infringement was exacerbated when Judge C subsequently assigned himself to the Greatting case after he had commented on Greatting's potential culpability.

The Supreme Court recognized in Liljeberg that we "must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice."  486 U.S. at 864 (citation and quotation marks omitted).  The conduct of Judge C in this case has created the risk of

---

[4] There is a significant difference between a military judge conducting a post-trial critique of trial counsel's performance and a military judge critiquing the convening authority's actions in prior companion cases and commenting on the potential culpability of a defendant in an upcoming case.

16

undermining the public's confidence in the military justice system.  Under the Liljeberg factors, Greatting is entitled to relief.

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed.  The findings of guilty and sentence are set aside.  The record of trial is to be returned to the Judge Advocate General of the Navy and a rehearing is authorized.

United States v. Greatting, No. 07-0575/MC

STUCKY, Judge (dissenting):

The majority finds prejudicial error in the military judge's private conversation with the staff judge advocate (SJA) about four already-completed cases and sets aside the findings and sentence pursuant to the multi-factor analysis of Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988). Because I would find no error or, alternatively, find any assumed error not prejudicial under Liljeberg, I respectfully dissent.[1]

The conversation between the military judge and the convening authority's SJA neither concerned Appellant's case nor gave any indication of a lack of impartiality by the military judge. The military judge admitted talking "with the staff judge advocate and probably his deputy[,] not about [Appellant's] case other than that it was coming . . . but about the other cases." In particular, he told the SJA that

> With respect to Cadriel, it was that I thought they sold the case too low given his culpability, his admissions in the Court, given the severity of his conduct, and the repercussions of his conduct on the junior Marines that were involved in the section, the security of this installation.
>
> . . . .

---

[1] Trial defense counsel requested recusal based on the military judge's "extensive exposure to the related cases and the nature of that exposure." As the majority correctly notes, however, presiding over companion cases does not, without more, constitute grounds for recusal. United States v. Lewis, 6 M.J. 43, 45 (C.M.A. 1978).

> . . . [F]ollowing my adjourning the Court, the defense counsel and the accused were high-fiving in the back of the courtroom and I felt that very inappropriate, unprofessional, and displayed a lack of remorse I thought on behalf of the accused in that particular case, and that was the Cadriel case.
>
> I think I also mentioned following the other . . . three cases . . . , that I felt given the level of culpability of Cadriel versus the younger Marines who were perhaps more guided or motivated by misguided loyalty to the other two staff NCO's that they worked for, I questioned the appropriateness of their being at a special court-martial.

The military judge also assured trial defense counsel that he could decide Appellant's case fairly, based on the facts presented at Appellant's court-martial alone.

These statements fall into two categories, neither of which has the effect or gives the appearance of granting an undue advantage to one party in Appellant's court-martial. United States v. Quintanilla, 56 M.J. 37, 79 (C.A.A.F. 2001). First, the military judge's critique of trial defense counsel's inappropriate conduct can hardly be considered error, let alone illustrative of prejudice. Indeed, a military judge has a duty under the Rules of Professional Conduct to advise an SJA of the unprofessional conduct of junior attorneys. See Dep't of the Navy, Judge Advocate General Instr. 5803.1C, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General, Enclosure (1): Rules of Professional Conduct Rule 8.3 (Nov. 9, 2004). Second, to

2

suggest that the military judge's comments about Staff Sergeant (SSgt) Cadriel's relatively low sentence evidenced a bias toward a harsh sentence in Appellant's case ignores civilian defense counsel's concession that no actual bias existed in this case and assumes a perverse willingness on the part of the military judge to use Appellant's court-martial to avenge a perceived failing in SSgt Cadriel's case.

I am aware of no case law supporting the proposition that a private conversation such as the one in this case constitutes grounds for recusal. In re Boston's Children First, 244 F.3d 164 (1st Cir. 2001), and United States v. Cooley, 1 F.3d 985 (10th Cir. 1993), cited by Appellant, are inapposite. Both cases involved judges who commented on pending cases through the national media. Children First, 244 F.3d at 166 (letter to the editor of the Boston Herald); Cooley, 1 F.3d at 990 (television interviews, including one with Barbara Walters). The military judge in this case spoke to the convening authority's SJA in private and restricted his comments to matters no longer before him. Before today, such actions were not, to my knowledge, even considered inappropriate, let alone grounds for recusal.[2]

---

[2] I do not question that it might have been better practice for the military judge to have limited his comments to the arguably improper behavior of counsel, and kept his comments regarding sentencing in other cases to himself. However, the question before us is whether recusal was required, and I cannot find it was on these facts.

Even assuming arguendo that the military judge abused his discretion by not recusing himself, I would decline to reverse for want of prejudice. While the majority correctly notes that Liljeberg requires us to assess (1) the risk of injustice to the parties in the particular case, (2) the risk that denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judiciary, I do not find the majority's analysis persuasive. Liljeberg, 486 U.S. at 864.

The risk of injustice to Appellant is minimal. Appellant, after all, pled guilty, and providently so, and the military judge handed down a sentence with confinement of less than half the limitation in Appellant's pretrial agreement (PTA). The majority concedes that the disparity between the confinement cap in Appellant's case and those in the companion cases may have resulted, in part, from the fact that Appellant was the last to enter a PTA. Together with its failure to provide any evidence that the military judge's conversations with the SJA influenced the convening authority's decision to agree to the terms of Appellant's PTA, these facts make the majority's conclusion that Appellant faced a significant risk of injustice highly dubious.

Furthermore, not reversing this case will not produce injustice in other cases. This Court clearly stated in United States v. Butcher, 56 M.J. 87 (C.A.A.F. 2001), that "[i]t is not

4

necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future." Id. at 93. This prong essentially asks us to consider whether a lack of reversal would encourage similar conduct in the future. The facts of this case are so distinct and innocuous -- private conversations about already-completed trials -- that I very much doubt that they could encourage any pattern of undesirable behavior.

Finally, the public's confidence in the military justice system will likely not be undermined by the military judge's conduct in this case. Given the guilty plea and the lenient sentence, no reasonable person could view the entire facts of this case and see bias and, as such, no reasonable person could see this case as a taint on the image of the military judiciary.

Therefore, since I would find no error, and any assumed error does not warrant relief under the applicable standard, I respectfully dissent.