# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WILSON, PENLAND, and WOLFE
Appellate Military Judges

## UNITED STATES, Appellee
v.
## Specialist PHILLIP L. WIGLITTON
### United States Army, Appellant

ARMY 20140638

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Karen H. Carlisle, Staff Judge Advocate

For Appellant: Major Daniel E. Goldman, JA (argued); Lieutenant Colonel Charles D. Lozano, JA; Major Andres Vazquez, Jr., JA; Major Daniel E. Goldman, JA (on brief).

For Appellee: Captain John Gardella, JA (argued); Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Major Matthew T. Grady, JA (on brief).

13 June 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WILSON, Chief Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of assault consummated by battery upon a child under the age of sixteen, two specifications of aggravated assault upon a child under the age of sixteen, and two specifications of child endangerment by culpable negligence, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty months, and reduction to the grade of E-1.

Appellant's case is now before us for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion and relief.[1]

---

[1] We heard oral argument in this case on 13 April 2016. Both parties not only provided exceptional presentations of the positions advanced in their briefs, but also offered well-reasoned and thoughtful responses to an array of questions raised by the court for the first time during oral argument.

## BACKGROUND

In February of 2014, appellant, on three separate occasions, committed physical abuse against his five-month-old son, VW. As a result of appellant's actions, VW suffered significant injuries, to include multiple rib fractures, skull fractures, and intracranial bleeding. Additionally, despite the fact that appellant was aware that during two of these instances his actions had likely caused significant injuries to VW, appellant did not seek immediate medical attention for his son. As a result of this misconduct, appellant was charged with and pleaded guilty to the above-listed assault and child endangerment offenses. The facts surrounding one of these offenses bear further review and consideration.

In Specification 2 of Charge I, appellant pleaded guilty to "commit[ing] an assault upon [VW], a child under the age of 16 years by hitting . . . [VW's] head on a doorframe, a means likely to produce death or grievous bodily harm."[2] Before discussing this specification with appellant, the military judge gave a detailed description of its elements and other relevant terms, to include "culpable negligence," "grievous bodily harm," and "likelihood" of death or grievous bodily harm.[3]

After appellant confirmed that he understood the elements and definitions, the military judge directed appellant to "[t]ell me why you believe you are guilty of . . . Specification 2 [of Charge I]." Appellant explained:

> [M]e and my son . . . were in the living room . . . in our home. He was in his rocking chair. I started to smell feces coming out of his diaper. So I looked down at him, and I noticed there was feces coming out of his diaper. So I went ahead and picked him up and put him on my hip . . . and . . . I ran with him to the bedroom so I could change his diaper, and right before we entered the bedroom, he threw himself back and then hit his head on the doorframe. So he started crying, and I put him on the bed, and then I got him to calm down by giving him his pacifier, and then

---

[2] The government originally charged appellant with "unlawfully strik[ing]" VW's head on a doorframe "thereby intentionally inflict[ing] grievous bodily harm upon him." Appellant pleaded guilty to aggravated assault by a means likely to cause death or grievous bodily harm by exceptions and substitutions.

[3] The military judge's definitions and explanations were highly consistent with those found in the Military Judge's Benchbook applicable at the time of appellant's trial. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-54-8 (1 Jan. 2010).

> I noticed that he had a [sic] swelling on his head from the doorframe . . . .

Appellant subsequently explained that VW suffered "a skull fracture and bleeding in his brain" as a result of this incident.

Following appellant's initial description of the offense, he and the military judge engaged in a lengthy colloquy about a number of key facts, to include: the specific manner in which appellant was carrying VW on his way into the bedroom; VW's "flailing" while in appellant's arms; how fast appellant was moving; and how wide the doorway was that VW struck his head on. For instance, appellant stated that if he entered the doorframe by himself, there would only be about "8 or 9 inches" of clearance between him and either side of the doorframe. Additionally, he testified that on instances when VW previously threw his head back while appellant was holding him against his hip, VW's head would be "8 to10 inches" away from appellant's arm.

The military judge was clearly having difficulty with the explanation of how appellant was carrying VW and how the child "threw himself back" the moment before they reached the door. At one point he noted, "I'm trying to understand and get a visual picture of this . . . ." Appellant provided a few additional details, to include that he had previously held VW against his hip and that VW had thrown his head back in a similar fashion. However, appellant also explained he had never held VW that way while he was "moving with him" and that during the event in question, he was "jogging" into the master bedroom and had not "done the math [himself] as to whether [VW's] head might clear the doorway if he arched his back like he normally did." He confirmed that he "didn't give [VW's arching back] a thought" as he approached the bedroom.

After a few more responses from appellant, the military judge stopped the colloquy and explained, "Counsel, I'm having a great amount of difficulty with Specification 2. It appears to me that this is nothing more than simple negligence." Trial counsel then provided the military judge with a case, *United States v. Mayo*, 50 M.J. 473 (C.A.A.F. 1999), which he told the military judge "discusses culpable negligence in a very similar situation."[4] The court then took a brief recess, and when they returned, both parties, relying on *Mayo*, reasserted their position that appellant's actions amounted to culpable negligence. The military judge maintained his skepticism, and re-opened the colloquy with appellant, asking appellant to verify that he "didn't think about the fact that there might not be sufficient clearance" for

---

[4] In *Mayo*, our superior court upheld Specialist Mayo's conviction (by a panel) for an assault against his 19-month-old child as legally sufficient, holding that "[t]he intentional throwing of a . . . child into a pile of clothes on the floor, with sufficient force and from a sufficient height to fracture the child's femur, is an act that a reasonable factfinder could determine was culpably negligent." 50 M.J. at 474-75.

VW's head as he jogged toward the bedroom. However, this time appellant answered "[n]o, sir, because I knew there was risk doing that, but I just disregarded it, because I could have secured his head while I was running with him through the door frame, and like I said, I just disregarded it and was reckless." The military judge responded "Okay. That's a little different than what you told me before, and all I'm interested in hearing from you is the truth, all right?" Ultimately, the military judge concluded the colloquy to his satisfaction with the following exchange:

> MJ: When you were headed down the hallway with him on your hip like this, did you think that there was a possibility that you might not fit through the door frame if he did arch his back like he normally did?
>
> ACC: Yes, sir.
>
> MJ: And if that happened, did you care what the results were?
>
> ACC: No, sir.
>
> MJ: Do you believe that the amount of force that was involved with him hitting his head on the door frame would have likely resulted in serious bodily injury as I have defined that term for you?
>
> ACC: Yes, sir.

Ultimately, the military judge concluded that appellant "has cleared the hurdle of culpable negligence," but "barely."

## DISCUSSION

In his sole assignment of error, appellant asserts that:

> THE MILITARY JUDGE ERRED BY ACCEPTING
> APPELLANT'S PLEA OF GUILTY TO SPECIFICATION
> 2 OF CHARGE I (ASSAULT WITH A MEANS LIKELY
> TO PRODUCE DEATH OR GRIEVOUS BODILY HARM
> ON A CHILD), WHERE THE EVIDENCE IS LEGALLY
> AND FACTUALLY INSUFFICIENT TO SUSTAIN A
> CONVICTION FOR THAT OFFENSE.[5]

---

[5] Because appellant pleaded guilty to this specification, we do not weigh the legal

(continued . . .)

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A guilty plea will not be set aside unless we find a substantial basis in law or fact to question the plea. *Inabinette*, 66 M.J. at 322. We apply this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Id.*; *see also United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) ("It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it . . . [or] if the ruling is based on an erroneous view of the law.").

Here, the military judge correctly and comprehensively defined and explained the elements of aggravated assault by a means likely to produce death or grievous bodily harm to appellant. Moreover, appellant gave a detailed description of what transpired during the event in question. When the military judge became alarmed that appellant's testimony did not provide an adequate factual basis to support each element of the offense—primarily if his actions with VW were in fact culpably negligent—he allowed each party to pause and review what they deemed was the controlling legal authority. The military judge reopened the providence inquiry and when appellant offered a slightly different account of the events, the military judge identified the inconsistency and ensured that appellant clarified his answer in accordance with the proper legal standard (i.e., culpable negligence). *See* Benchbook, para. 3-54-8. This was not an instance of a military judge merely "drag[ging] appellant across the providence finish line." *United States v. Le*, 59 M.J. 859, 864 (Army Ct. Crim. App. 2004) (citation omitted).

Although we harbor what we perceive to be many of the same doubts as the military judge with respect to the plausibility of appellant's account of Specification 2 of Charge I, we are reluctant to disturb the factual assertions and admissions made by appellant in his stipulation of fact and again during his lengthy providence inquiry—to include a recess where he presumably had ample opportunity to discuss any concerns with his defense counsel. Had this been a contested trial, and had appellant's explanation instead been a theory unilaterally advanced by the government, a fact finder or this court (in its Article 66(c), UCMJ, factual and legal sufficiency review) may have reached a different result. However, "we adhere to the well-established principle that a guilty plea generally precludes the post-trial litigation of factual questions pertaining to one's guilt." *United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997). The military judge did not abuse his discretion in accepting appellant's guilty plea to this offense.

---

(. . . continued)
and factual sufficiency of the evidence supporting the offense, but rather we evaluate whether the military judge abused his discretion by accepting appellant's plea—a subtle but important distinction in our Article 66(c), UCMJ, review. At oral argument, the parties agreed this was the proper standard of review and proceeded accordingly.

On appeal, however, our duties are different than that of the military judge. While not amounting to legal error, our concerns with appellant's plea are not entirely extinguished. In light of our Article 66(c), UCMJ, "duty" to "affirm only such findings of guilty . . . as [we] . . . determine, on the basis of the entire record *should be approved*," we will exercise this "highly discretionary power" here and affirm only the lesser-included offense of an assault consummated by battery upon a child under the age of 16 years. *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001).

## CONCLUSION

On consideration of the entire record, we AFFIRM only so much of Specification 2 of Charge I as finds that:

> In that [Appellant], U.S. Army, did, at or near White Sands Missile Range, New Mexico, between on or about 1 February 2014 and on or about 28 February 2014, commit an assault upon VW, a child under the age of 16 years, by hitting the said VW's head on a doorframe.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident the military judge would have adjudged at least as severe a sentence as that which the convening authority ultimately approved. The approved sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside and dismissed by this decision are ordered restored.

Judge PENLAND and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

6