# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major FRANCISCO I. GUMATAOTAO**
**United States Army, Appellant**

ARMY 20150765

Headquarters, 1st Infantry Division and Fort Riley
Charles L. Pritchard, Jr., Military Judge
Lieutenant Colonel Timothy A. Furin, Staff Judge Advocate (pretrial)
Colonel Warren L. Wells, Staff Judge Advocate (post-trial)

For Appellant:  Major Christopher D. Coleman, JA; Captain Jennifer K. Beerman, JA.

For Appellee:  Pursuant to A.C.C.A. Rule 15.2, no response filed.

22 June 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of willful disobedience of a superior officer, three specifications of lewd acts with a child, and two specifications of sexual assault with a child, in violation of Articles 90, 120, and 120b, the Uniform Code of Military Justice, 10 U.S.C. § 908, 920, and 920b (2006 and 2012) [hereinafter UCMJ].  The convening authority approved the adjudged sentence of a dismissal and confinement for twenty years.

This case is before us for review pursuant to Article 66, UCMJ.  Appellate counsel submitted this case upon its merits.

## BACKGROUND

Appellant was charged with and pleaded guilty to two specifications of willful disobedience in violation of Article 90, UCMJ. The first specification, Specification 1 of Charge III, alleged:

> [Appellant], U.S. Army, having received a lawful command from Captain J.P., his superior commissioned officer, then known by [appellant] to be his superior commissioned officer, to cease all contact with Ms. C.J.G. after 7 November 2014, or words to that effect, did, at or near Fort Riley, Kansas, on or about 1 December 2014, willfully disobey the same.

Specification 2 of Charge III, alleged:

> [Appellant], U.S. Army, having received a lawful command from Captain J.P., his superior commissioned officer, then known by [appellant] to be his superior commissioned officer, to cease all contact with Ms. C.J.G. after 7 November 2014, or words to that effect, did, at or near Fort Riley, Kansas, on or about 4 December 2014, willfully disobey the same.

During the providence inquiry, the military judge defined the elements and definitions of the offenses, including "willful disobedience," which "means an intentional defiance of authority." The following colloquy occurred between the military judge and appellant regarding Specification 1 of Charge III:

> MJ: . . . [T]ell me what happened.
>
> ACC: Basically, sir, I was sleeping . . . it was roughly around 0400/0500 our time, 0430 our time. I received a call on my cell phone; it was from my daughter, [Ms. C.J.G.]. And we started communicating. I was supposed to break contact immediately and inform my chain-of-command, which is what I failed to do.
>
> MJ: You have a Smart phone or something?
>
> ACC: It was an iPhone, sir.
>
> MJ: And could you see that it was her before you answered the call?

ACC:  Negative, sir, because on the iPhone it just says "Wife," so when I receive a phone call from my wife's cell phone or from the house phone, it just says "Wife." So when I saw "wife," I just answered it.

MJ:  Okay.  So you didn't actually know it was [Ms. C.J.G.]. contacting you until you answered the call and heard her voice?

ACC:  Yes, Sir.

. . .

MJ:  So how did you violate the No-Contact Order by answering the phone and talking to her when she called you?

ACC:  Basically, sir, the No-Contact Order said no communication, regardless of who reaches out to who. Basically it's just no contact.  And when she called, we talked for at least 10 or more minutes.

. . .

MJ:  And then – well, why did you carry on the conversation with her, knowing that you had received the order not to do so about a month beforehand?

ACC:  Sir, that's a personal thing as a father.  You know, when my daughter called, she was crying.  Even though I knew there was a No-Contact Order, I just didn't have it in me to just hang up on my child when she was in distress, and so I talked to her.

MJ:  Do you believe that you were intentionally defying your company commander?

ACC:  At the time, sir, I honestly didn't think about it. Like I said, it was early in the morning.  But after the fact, yes, I realized, you know, I broke the No-Contact Order.

Appellant's providence inquiry was substantially similar for Specification 2 of Charge III: Ms. C.J.G. called him crying, his phone said "Wife," and he continued to talk to Ms. C.J.G. instead of immediately ceasing the conversation.

At this point, the military judge stated that appellant's providence inquiry did not constitute "willful disobedience." Government counsel argued that there was a confirmation from the appellant at the beginning of the call where he stated, "Hey, we shouldn't be talking," and the fact that he continued the conversation afterwards shows intentional defiance. The parties took a recess.

After the parties returned, the military judge addressed the issue again with appellant:

> MJ: . . . [L]et's focus on the willful disobedience part. As I defined it to you . . . is there anything else you want to say on that?
>
> ACC: Yes, sir. I stand corrected. I couldn't remember because it's been so long ago. But at that time when I did have that phone call, I did know that I was violating the No-Contact Order.
>
> MJ: How?
>
> ACC: Because at some point in the beginning of the [1 December] conversation, I said, "I'm not supposed to be talking to you," or something to that effect.
>
> . . .
>
> MJ: So you were thinking about it and decided to carry on the conversation regardless of the order that your company commander had given you?
>
> ACC: Yes, sir.
>
> MJ: And was that true for the 4 December call as well?
>
> . . .
>
> ACC: Yes, sir. Sir, it was basically three days from the first phone call; it's in the same time frame. I knew I'm not supposed to be having contact, and we still had a conversation.

The No-Contact Order was attached to the Stipulation of Fact and stated the following: "If an attempt is made by [Ms. C.J.G.] to contact you through any of the above means you will immediately contact the chain of command . . . to ensure the command is aware of the attempt." Additionally, the audio recorded phone calls were attached to the Stipulation of Fact and labeled "Pretext Phone call 1 Dec 14" and "Pretext Phone call 4 Dec 14." There also appeared to be a woman facilitating the phone call on the video and audio recording of the 1 Dec 14 call. However, there was no discussion on the record as to whether these calls were pretext.

## LAW AND DISCUSSION

"During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). We review a military judge's decision to accept a plea for an abuse of discretion by determining whether the record as a whole shows a substantial basis in law or fact to question the plea. *Inabinette*, 66 M.J. at 322.

The nature of the disobedience as contemplated in Article 90, versus that of Article 92, is markedly different. According to the *Manual for Courts-Martial, United States* (2012 ed.)[hereinafter MCM], "'Willful disobedience' is an intentional defiance of authority. Failure to comply with an order through heedlessness, remissness, or forgetfulness is not a violation [of Article 90], but may violate Article 92." *MCM*, pt. IV, ¶14.c.(2)(f).

In light of our Article 66(c), UCMJ, "duty" to "affirm only such findings of guilty . . . as [we] . . . determine, on the basis of the entire record *should be approved*," we will exercise this "highly discretionary power" here and affirm only the lesser-included offense of a failure to obey a lawful order, in violation of Article 92, UCMJ. *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001).

## CONCLUSION

Upon consideration of the entire record, the findings of guilty of Charge III and its Specifications are set aside. However, we affirm a finding of guilty to the lesser-included offense of failure to obey an order in violation of Article 92(2), UCMJ as finds that:

> [Appellant], U.S. Army, having knowledge of a lawful
> order issued by Captain J.P., his superior commissioned
> officer, to cease all contact with Ms. C.J.G. after 7
> November 2014, or words to that effect, an order which it

5

was his duty to obey, did, at or near Fort Riley, Kansas, on or about 1 December 2014, fail to obey the same.

[Appellant], U.S. Army, having knowledge of a lawful order issued by Captain J.P., his superior commissioned officer, to cease all contact with Ms. C.J.G. after 7 November 2014, or words to that effect, an order which it was his duty to obey, did, at or near Fort Riley, Kansas, on or about 4 December 2014, fail to obey the same.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16, we AFFIRM the sentence. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his findings set aside by this decision, are ordered restored.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court