UNITED STATES of America

v.

Ian C. BREMER, Lance Corporal
(E–3), U.S. Marine Corps

NMCCA 201200472
SPECIAL COURT–MARTIAL

U.S. Navy–Marine Corps Court
of Criminal Appeals

Sentence Adjudged: 27 June 2012.

23 May 2013

**Military Judge:** LtCol Robert G. Palmer, USMC.

**Convening Authority:** Commanding Officer, Weapons and Field Training Battalion, MCRD, Parris Island, SC.

**Staff Judge Advocate's Recommendation:** LtCol S.D. Manning, USMC.

For Appellant: LT Carrie E. Theis, JAGC, USN.

For Appellee: LT Ian MacLean, JAGC, USN.

Before J.R. PERLAK, M.D. MODZELEWSKI, C.K. JOYCE, Appellate Military Judges

## PUBLISHED OPINION OF THE COURT

PERLAK, Chief Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of one specification of wrongful use of cocaine and one specification of wrongful introduction of cocaine onto a military installation, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. The military judge sentenced the appellant to reduction to the pay grade E–1, six months' confinement, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, with the exception of the bad-conduct discharge, ordered it executed.

The appellant now argues that the military judge should have disqualified himself because he exhibited an actual bias and, alternatively, failed to appear impartial.[1] He also argues that the record of his trial was not verbatim (meaning that a punitive discharge would not be authorized) because the military judge attached an Appellate Exhibit to it. Finally, he argues that the military judge committed unlawful command influence by speaking *ex parte* with a senior judge advocate who then testified as a Government witness about the military judge's impartiality.

We are persuaded that actions of the military judge created a situation wherein his impartiality might reasonably be questioned. His failure to disqualify himself per RULE FOR COURTS-MARTIAL 902(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) was error infecting the sentencing phase of this court-martial and requires us to remand for resentencing.

### Background

The record before us is 345 pages in length, the majority of which is focused on a motion to recuse or disqualify the military judge. The findings portion of this court-martial was a brief and unremarkable affair covering 36 pages. The presentencing record covers another 90 pages, including witness testimony indicative of the appellant suffering from complex post-traumatic stress disorder. After hearing this testimony, the military judge placed the court in recess and ordered an evaluation of the appellant under R.C.M. 706. The court-martial recessed on 25 May 2012.

The results of the R.C.M. 706 examination were received on 11 June 2012, and the remainder of the court-martial was scheduled for 22 June 2012. On 21 June 2012, the military judge provided professional military education (PME) to five student judge advocates.[2] Although these students worked in

---

1. In his first assignment of error, the appellant has alleged both actual and apparent bias, even though his trial motion was restricted to apparent bias. Record at 310. We are not persuaded that this military judge bore an actual, personal bias against the appellant, and thus we have limited our analysis to the equally important question of appearances under R.C.M. 902(a).

2. "Student judge advocates" are commissioned Marine Corps officers attending law school or recent law school graduates who have not yet completed Naval Justice School. They perform

different offices (two in defense, two in military justice, and one in legal assistance), the PME addressed the duties of a trial counsel.

During the training, the military judge made several statements, the tenor of which was hyperbolic and, in context, injudicious.

Written statements by student judge advocates in attendance (one from the defense office, and one from military justice) describe the military judge's comments. One was dated 21 June 2012, and the other 22 June 2012. The day after the training, 22 June 2012, the defense moved for the military judge to recuse or disqualify himself from this case under R.C.M. 902(a), attaching the two written statements by student judge advocates to the motion. In response, the military judge held an Article 39(a), UCMJ, session on the motion on 27 June 2012. The motion hearing covers 192 record pages [3] and constitutes the bulk of the record of trial in this case.

A somewhat different account of the comments emerged on 27 June 2012, when the court reconvened and the military judge answered *voir dire* questions from counsel. Following trial, the military judge eventually wrote his recollection of the comments in his "Findings of Fact," dated 2 July 2012, which are appended to the record.

One factual dispute concerns the military judge's reference to the Commandant of the Marine Corps. One of the student judge advocates alleged that the military judge said the Commandant wanted more convictions in sexual assault cases, while the military judge claimed that he said the Commandant wanted a "higher level of competence." *Compare* Appellate Exhibit IX at 1 *with* AE XIV at 4.

Below, additional facts are described as necessary.

**Discussion**

■ " 'An accused has a constitutional right to an impartial judge.' " *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)

(quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F.1999)). If the military judge's impartiality might reasonably be questioned, he has a duty to disqualify himself. R.C.M. 902(a). We review a military judge's decision whether to recuse or disqualify himself for an abuse of discretion. *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F.2000).

■ "When a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's actions.... [T]he test is objective, judged from the standpoint of a reasonable person observing the proceedings." *United States v. Quintanilla*, 56 M.J. 37, 78 (C.A.A.F.2001) (citation and internal quotation marks omitted).

■ The appellant must clear a "high hurdle" to prove that a military judge was partial or appeared to be so, despite a "strong presumption" to the contrary. *Id.* at 44. If, *arguendo*, he did not clear that hurdle based on the military judge's comments standing alone, we are convinced by the record of the extraordinary motion hearing that followed. At that point, the military judge provided a real-life example of what was, for the *Quintanilla* Court, a hypothetical of disqualifying behavior: when "the challenged judge, in order to compensate for the appearance of ... a bias ... has bent over backwards to make it seem as though he has not acted as a result of such bias." 56 M.J. at 43–44 (citation and internal quotation marks omitted). The military judge took the following actions in this regard, which we conclude would lead a reasonable person to question whether he lost his fairness and impartiality and became primarily focused on protecting himself:

1. In an attempt to explain his conduct, the military judge opened the hearing with a prepared series of pronouncements that cover six single-spaced pages of transcript,

---

temporary additional duties during academic breaks to obtain on-the-job familiarity with the duties of a judge advocate.

**3.** Our references to page length in this opinion are for context only and are not indicative, stand-

ing alone, of an ability to either cause or prevent the disqualification of a judge through exhaustive litigation of a motion brought under R.C.M. 902(a).

over a defense objection that the statement made the military judge a witness to the motion he was himself deciding.

2. As he read his prepared statement, although the military judge purported to accept responsibility, he was palpably defensive and transparently critical of two junior judge advocates. He began by providing a lengthy description of a trial counsel's errors during recent arraignments in his courtroom. The military judge also alleged that one of the student judge advocates who authored an affidavit had dozed off during his PME, presumably detracting from her credibility as a witness.

3. The military judge admitted that his "comments would be seen as coming from the prospective of a hard-charging trial counsel seeking justice," but insisted that, despite his current billet, he "never intended ... [that] these comments would be viewed as coming from [his] position as a military judge." Record at 132. In his view, his comments were a motivational and "hyperbolic" form of "play-acting for the edification of student judge advocates." *Id.* at 132-33. But he never explained that to the student judge advocates in attendance, and assumed that the student who requested the training would inform the other students of the intended "context" and "perspective." *Id.* at 133.

4. The military judge apparently played some role in the appearance of a senior judge advocate to "offer ... helpful testimony" at the motion hearing. *Id.* at 137. The defense objected to this testimony because the military judge had spoken privately with the witness, who seemingly had no firsthand knowledge of the facts directly relevant to the motion. But the military judge overruled the objection, and the witness proceeded to give what amounted to a character defense of the military judge. *Id.* at 297. The witness notably closed his testimony in a manner evocative of an advocate's summation, specifically addressing the defense counsel thus: "You have got to consider everything that I've said

and all of the other witnesses, and then you have to ask yourself, is he going to be unfair, is he going to be biased. You know, you have to ask is that man going to be fair or not. And I would hope that after the close of the testimony, after hearing the judge, a man whom I believe to be an honorable man, that you'll tell your client that he'll have a fair trial." *Id.* at 302.

5. The military judge also appears to have appended a six-page affidavit to the record following trial,[4] written by a judge advocate he supervised in the defense office at a previous duty station. *See* AE VI. Again, the tenor of the affidavit is a character defense of the military judge. The author attempts to explain that the military judge often made similar comments as a way to force counsel to adopt a different perspective. Most of the affidavit focuses on the military judge's superior qualities as a supervisor and lawyer, closing with the line: "Were I to be accused of a crime, I would hope for a court-martial ... with a military judge as knowledgeable in the law and dedicated to the process and justice as [this military judge] ... and I would hope for another judge advocate just like him to represent me." *Id.* at 6.

6. When one of the student judge advocates testified (the same one who the military judge drew attention to for appearing groggy during his PME), the military judge allowed the trial counsel to ask her several peculiar questions, including what her law school grade point average was, whether she agreed that the military judge "has a brilliant legal mind," and whether she was "astounded by his ability to cite case law from memory." Record at 207, 216.

7. The military judge appended another document to this record following trial, styled as his ruling on Defense Motion Requesting Recusal or Disqualification of the Military Judge, AE XIV. It contains "Findings of Fact" which are indistinguish-

---

4. The affidavit was not introduced by either party, but the military judge referred to it in passing during his comments at the motion hearing. Record at 132. The appellant's brief states that

the trial defense counsel first saw the affidavit when he authenticated the Record of Trial. Appellant's Brief of 24 Jan 2013 at 22.

able from factual assertions or recollections drawn from the military judge's own memories or perspective on events. The exhibit is an ungainly read, with the military judge writing about himself in the third person yet inserting commentary and context that can only be relayed from the perspective of the first person. It relies heavily on the senior judge advocate's supportive testimony.

■ At this motion hearing and afterward, the military judge became "part of the problem, rather than part of the solution." *United ed States v. Gorski*, 48 M.J. 317, 324 (C.A.A.F.1997) (memorandum opinion). His attempt to fill the record with enough facts to dispel the appearance of bias only made him look more self-interested. He appears to have believed that a "reasonable person with all the knowledge and facts" would have to understand the military judge's intent in order to decide the question of partiality. Record at 317. But assessing the *appearance* of partiality simply does not depend on anyone's subjective knowledge and intent, much less the military judge's, since that "is not the sort of objectively ascertainable fact that can avoid the appearance of partiality." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (citation and internal quotation marks omitted); *see also Wright*, 52 M.J. at 141 ("RCM 902(a) is assessed not in the mind of the military judge himself, but 'rather in the mind of a reasonable man . . . .' ") (citations omitted).

The military judge, on the uncommon facts of this case, abused his discretion and erred in his determination that no reasonable person would doubt the legality, fairness, and impartiality of this court-martial and erred in failing to disqualify himself from proceeding with the court-martial and in sentencing the appellant. Having found error, we next consider whether the appellant has been prejudiced as a result.

### Prejudice

■ We analyze separately whether this error was harmless under *Liljeberg*, and whether it materially prejudiced the appellant's substantial right under Article 59(a), UCMJ. *United States v. Martinez*, 70 M.J. 154, 159 (C.A.A.F.2011). Under both tests, we find prejudice. Taking the latter first, it is axiomatic that the right to an actually and apparently impartial military judge is substantial. Here, we are convinced that this appellant suffered material prejudice when his court-martial was subsumed into litigation over the military judge's injudicious comments and the hearing that followed, wherein the military judge both essentially gave and took testimony which convinced him of his own impartiality, through a combination of bolstering of his own character and, unfortunately, the public discrediting of those who would challenge his impartiality.

*Liljeberg* directs our attention to three risks, all present in this case: the risk of injustice to the parties, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. 486 U.S. at 864, 108 S.Ct. 2194. Injustice to the appellant is apparent from the fact that his trial by court-martial was overtaken by the issues surrounding the challenge made to the military judge. On this extraordinary record, the military judge's comments cannot be deemed harmless. His actions undermine public confidence in the military justice system. "[G]ranting relief will have the salutary effect of reinforcing the judicial demand for impartiality." *United States v. Hayes*, No. 200600910, 2010 WL 4249518, at *5, 2010 CCA LEXIS 364, at *17, unpublished op. (N.M.Ct.Crim.App. 28 Oct 2010).

■ The judge advocate community must maintain an unwavering commitment to ethical legal and judicial practice, in which "appearance and reality often converge as one." *Liteky v. United States*, 510 U.S. 540, 565, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring). "[T]he nature of relationships between a military judge and non-judge members of the judge advocate community requires increased vigilance to ensure propriety." *United States v. Greatting*, 66 M.J. 226, 230 (C.A.A.F. 2008).

### Conclusion

"Neither R.C.M. 902(a) nor applicable federal civilian standards mandate a 'particular

remedy' for situations in which an appellate court determines that the military judge should have removed himself. . . ." *Butcher,* 56 M.J. at 92 (citing *Liljeberg,* 486 U.S. at 862, 108 S.Ct. 2194). Like the *Butcher* Court, we observe that the impartiality issue in this case arose during a break in the proceedings. Similarly, we hold that this chronology argues against dismissal as a remedy, since we can find no substantial basis to question a guilty plea that occurred nearly one month before the military judge's comments. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F.2008). However, we cannot affirm the appellant's sentence awarded by this military judge following his erroneous ruling on the motion to recuse or disqualify which immediately preceded it.

Although Specification 1 of Charge III alleged that the wrongful use began on or about 1 December 2011, the earliest date to which the appellant stipulated was 1 January 2012. Prosecution Exhibit 1 at 1. During the providence inquiry the appellant stated "mid-January." Record at 20. As to Specification 1 of Charge III, the finding is affirmed ex-cept for the word and figures "1 December 2011" and substituting therefor the word and figures "1 January 2012." The remaining findings are affirmed.

The sentence is disapproved and the record returned to the Judge Advocate General for remand to an appropriate convening authority with a rehearing authorized. If a rehearing is not ordered, the convening authority may approve a sentence of no punishment. We find the remaining two assignments of error, related to the record of trial and the allegation of unlawful command influence, to be without merit.[5]

Senior Judge MODZELEWSKI and Judge JOYCE concur.

---

5. We find the *ex parte* conversation between the military judge and the senior judge advocate (who testified ostensibly on behalf of the United States, but as a practical matter as a character witness for the military judge himself) to be irregular and self-serving. However, there is no evidence that the military judge influenced the witness to testify in any particular way. Further, the witness recalled that he offered to testify without being asked. Record at 301.