# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

**v.**

**DANIEL W. SANDERS**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201200202**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 8 March 2012.
**Military Judge**: LtCol Robert G. Palmer, USMC.
**Convening Authority**: Commanding Officer, Headquarters and Service Battalion, Marine Corps Recruit Depot, Parris Island, SC.
**Staff Judge Advocate's Recommendation**: Col E.R. Kleis, USMC.
**For Appellant**: LT Carrie E. Theis, JAGC, USN.
**For Appellee**: LCDR Keith B. Lofland, JAGC, USN.

**30 September 2014**

---
**OPINION OF THE COURT**
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of knowingly using an interactive computer service for carriage in interstate commerce of obscene, lewd, lascivious, and filthy matter,[1] in violation of Article 134, Uniform Code of Military Justice, 10

---
[1] A violation of 18 U.S.C. § 1462, charged under Clause 3 of Article 134, UCMJ.

U.S.C. § 934.  The military judge sentenced the appellant to confinement for twelve months, reduction to pay grade E-1, and a bad-conduct discharge.  A pretrial agreement limited punishment to the jurisdictional maximum of a special court-martial and had no effect on the sentence adjudged.  The convening authority (CA) approved the sentence as adjudged and, except for confinement in excess of ten months[2] and the punitive discharge, ordered it executed.

This case is before us upon remand by the United States Court of Appeals for the Armed Forces (CAAF).  We begin with a brief recitation of the case's procedural posture.  In his original appeal, the appellant assigned one error: that the military judge was disqualified by his inflexible attitudes about sentencing and by allowing his perceptions of what Congress and the Commandant of the Marine Corps expect from Marine Corps courts-martial to enter into his deliberations.  The appellant's assignment also alleged unlawful command influence (UCI).  In our initial decision, *United States v. Sanders,* No. 201200202, 2012 CCA LEXIS 441, unpublished op. (N.M.Ct.Crim.App. 13 Nov 2012), we affirmed the findings and the sentence as approved by the CA.

The appellant's subsequent appeal resulted in the CAAF setting aside our opinion and returning the case to the Judge Advocate General of the Navy for remand to this court for further consideration in light of our decision in *United States v. Kish,* No. 201100404, 2014 CCA LEXIS 358, unpublished op. (N.M.Ct.Crim.App. 17 Jun 2014).[3]  The appellant has essentially reframed his original assignment of error, now claiming that he was deprived of his constitutional right to an impartial judge. An additional assignment of error claims the military judge's close personal relationship with the CA amounted to apparent UCI.

After carefully considering the record of trial and the submissions of the parties, we conclude the facts of this case, viewed together with post-trial comments and actions of the military judge, give rise to an appearance of bias.  We address the remedy in our decretal paragraph.

---

[2] As a matter of clemency, the CA suspended all confinement in excess of ten months for a period of one year, at which time, unless sooner vacated, the suspended portion will be remitted.

[3] *United States v. Sanders,* 73 M.J. 54 (C.A.A.F. 2013) (summary disposition).

## Background

The first assigned error focuses on post-trial comments made by the military judge. Approximately 15 weeks after he sentenced the appellant, the military judge presented a Professional Military Education (PME) lecture to five Marine law school students on active duty for the summer. This training regarded the practice of military justice in general, and the role of a trial counsel in particular. In discussing trial strategy, the military judge encouraged the junior officers to charge and prosecute cases aggressively, referred to "crushing" the accused, stated that Congress and the Commandant of the Marine Corps wanted more convictions, and opined that trial counsel should assume the defendant is guilty.[4] He also said that a trial counsel who loses a child pornography case through incompetence will "go to hell."[5] Two of the officers who attended the PME provided written statements regarding the military judge's comments, which now form the basis for the appellant's assigned error. A fair reading of one statement is that the law student found the military judge's comments "odd" and "somewhat bothersome," but also believed some of the comments were made in jest.[6]

Less than a week after the PME training, the military judge ruled on a motion to recuse or disqualify himself in an unrelated case.[7] During a hearing on the motion, the military judge "apparently played some role in the appearance of a senior judge advocate" who provided "what amounted to a character defense of the military judge."[8] That senior judge advocate is the CA in this case.

The PME comments by the military judge were the subject of a hearing pursuant to *United States v. DuBay,* 17 C.M.A. 147 (C.M.A. 1967).[9] Based on the context of these statements, this court

---

[4] Appellant's Brief of 16 Aug 2012 at Appendices I and II.

[5] *Id.*

[6] *Id.*

[7] In *United States v. Bremer,* 72 M.J. 624, 626 (N.M.Ct.Crim.App. 2013), we modified and then affirmed the findings, and set aside the sentence with a rehearing on sentence authorized. Following the rehearing, we affirmed the approved sentence. *United States v. Bremer*, 2014 CCA LEXIS 27, unpublished op. (N.M.Ct.Crim.App. 23 Jan 2014) (summary disposition).

[8] *Bremer*, 72 M.J. at 627.

[9] Appendix to *Kish,* 2014 CCA LEXIS 358, at 15-39 (*DuBay* Hearing Findings of Fact and Conclusions of Law of 15 July 2013) (hereinafter *Dubay* ruling).

concluded that the military judge "was voicing not his own biases or prejudices, but instead a mindset that he believes a junior counsel must adopt to be a tenacious and zealous advocate." This court further concluded that the military judge was not actually biased against accused service members within the meaning of RULE FOR COURTS-MARTIAL 902(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[10] The findings and conclusions from the *DuBay* Ruling remain those of this court.

Additional facts that concern the procedural posture of this case or are necessary to discuss the assignments of error are incorporated below.

## Apparent Bias

We review whether a military judge's post-trial actions demonstrate actual or apparent bias *de novo*.[11] "'An accused has a constitutional right to an impartial judge.'"[12] The Rules for Courts-Martial provide that a military judge must disqualify himself if the military judge's impartiality might reasonably be questioned.[13] Specific grounds for disqualification include personal bias and prejudice concerning a party.[14] A military judge's impartiality is crucial to the conduct of a legal and fair court-martial.[15]

"There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle,

---

[10] *DuBay* Ruling at 38.

[11] The CAAF has applied this standard when facing questions that the appellant could not reasonably have raised at trial. *See, e.g., United States v. Rose,* 71 M.J. 138, 143 (C.A.A.F. 2012) (reviewing *de novo* the deficient performance and prejudice aspects of an ineffective assistance of counsel claim); *United States v. Stefan,* 69 M.J. 256, 258 (C.A.A.F. 2010) (considering *de novo* the qualification of a staff judge advocate to make the post-trial recommendation).

[12] *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (quoting *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)).

[13] R.C.M. 902(a) states that a military judge shall "disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Disqualification may be required even if the evidence does not establish actual bias. *United States v. Quintanilla*, 56 M.J. 37, 43 (C.A.A.F. 2001).

[14] R.C.M. 902(b)(1).

[15] *Quintanilla*, 56 M.J. at 43.

4

particularly when the alleged bias involves actions taken in conjunction with judicial proceedings."[16]  "The moving party has the burden of establishing a reasonable factual basis for disqualification.  More than mere surmise or conjecture is required."[17]

The test we apply is "whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's actions."[18]  This test may be met when there is "any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned."[19]  "The appearance standard is designed to enhance public confidence in the integrity of the judicial system."[20]

The appellant alleges both actual and apparent bias.  As this court has already held that the military judge's PME statements do not support a determination of actual bias against servicemember defendants,[21] and the appellant having made no showing that the military judge had an actual personal bias or prejudice concerning him or his case, we find no actual bias here.  Accordingly, we now look to whether there was apparent bias concerning the appellant's case.

We are convinced a reasonable person fully aware of the context of the PME statements would not be concerned regarding the judges impartiality in this case.  It would be one thing, therefore, if the only evidence before us was the military judge's PME comments.  But it is quite another when these statements are

---

[16] *Id.* at 44.

[17] *Wilson v. Ouelette*, 34 M.J. 798, 799 (N.M.C.M.R. 1991) (citing *United States v. Allen*, 31 M.J. 572, 605 (N.M.C.M.R. 1990), *aff'd*, 33 M.J. 209 (C.M.A. 1991)).

[18] *Martinez,* 70 M.J. at 157 (citation and internal quotation marks omitted).

[19] *Id.* at 158-59 (citing *United States v. Kincheloe,* 14 M.J. 40, 50 (C.M.A. 1982)).

[20] *Quintanilla,* 56 M.J. at 45 (citing *Liljeberg v. Health Service Acquisition Corp.,* 486 U.S. 847, 860 (1988)).

[21] *DuBay* Ruling at 38.

viewed in conjunction with the sum of several relevant facts. Specifically:

(1) **The charged conduct involved child pornography.** Although the appellant was convicted of only one specification involving "obscene, lewd, lascivious, and filthy matter," the guilty plea inquiry revealed these materials included "child pornography or images of actual children engaging in sexually explicit conduct."[22]  Two images were verified by the National Center for Missing and Exploited Children as involving known minors.

(2) **The sentence was the maximum possible.**  The military judge essentially sentenced the appellant to the maximum sentence he was authorized to award.[23]  (We are in no way saying the punishment was inappropriately severe; we merely note that the *maximum extent* of the punishment here is relevant to an apparent bias analysis.)

(3) **The PME statements were made approximately three months after trial.**  Although opinions may differ whether this is a meaningfully close temporal relationship between the court-martial and PME training, it is sufficiently close that an objective observer could reasonably connect the two events.

(4) **The military judge had a close relationship with the CA.**  The appellant raises this relationship in the context of UCI, but we believe it also bears on the issue of apparent bias.  That their relationship is so close that the CA would come to court and testify to the military judge's fitness as a judge and "an honorable man"[24] is one more block upon which a

---

[22] Record at 24.

[23] The military judge did not impose a fine or forfeiture.  However, having discussed automatic forfeitures with the appellant, he was certainly aware of the effect his sentence would have on the appellant's pay, that is, roughly the equivalent of adjudged forfeiture of two-thirds pay for 12 months.  Record at 38.

[24] *Bremer,* 72 M.J. at 627.

reasonable person could base his appraisal of the judge's impartiality.

As we noted in *Kish*, the military judge's statements during the PME lecture "reflect exceptionally poor judgment and invite questions regarding judicial temperament and professionalism."[25] While an examination of the circumstances surrounding the PME lecture place the statements properly in context, and none of the above mentioned facts standing alone would raise the specter of bias, we find that a reasonable person knowing all the circumstances of the lecture, *when combined with the additional facts relevant to this case*, would question the integrity of the judicial system.[26] Accordingly, we find apparent bias.

## Remedy

Where apparent bias exists, the CAAF has adopted a three-part test[27] for determining whether a reversal of a conviction is necessary to vindicate the public's confidence in the military justice system:

> (1) What is the risk of injustice to the parties in the particular case?
>
> (2) What is the risk that the denial of relief will produce injustice in other cases?
>
> (3) What is the risk of undermining the public's confidence in the judicial process?

First, the risk of injustice to the parties is high. Judges are invested with extraordinary discretion in determining an appropriate sentence. The military judge's imposition of the most severe sentence possible in this case is called into question by the appearance of bias.

Secondly, while denial of relief in this case will not itself produce an injustice in other cases, granting relief will have the salutary effect of reinforcing the demand for judicial

---

[25] *DuBay* Ruling at 38.

[26] *See Martinez,* 70 M.J. at 159.

[27] *Quintanilla,* 56 M.J. at 80-81 (citing *Liljeberg*, 486 U.S. at 864).

impartiality.

Thirdly, and arguably most importantly, we turn to the question of the public's confidence in our judicial process. When examining the facts of this case in light of the military judge's public remarks, a reasonable member of the public would conclude that the judge's impartiality in this case might reasonably be questioned. We find that the military judge's conduct warrants a remedy to vindicate the public's confidence in the military justice system.

We need not address the appellant's claim of UCI. The appellant pleaded guilty and does not claim that the acceptance of his pleas was in any way defective. As for his sentence, the remedy provided in our decretal paragraph addresses any appearance of bias on the part of the military judge, regardless of the source.

## Conclusion

The findings are affirmed and the sentence is set aside. A rehearing on sentence is authorized.

For the Court


R.H. TROIDL
Clerk of Court