*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellant

**v.**

## David J. RUDOMETKIN, Major
United States Army, Appellee

**No. 22-0105**
Crim. App. No. 20180058

Argued May 24, 2022—Decided August 15, 2022

Military Judges: Richard J. Henry (trial), Jeffrey R. Nance (post-trial), and Douglas K. Watkins (post-trial)

For Appellant: *Major Dustin L. Morgan* (argued); *Colonel Christopher B. Burgess*, *Lieutenant Colonel Craig J. Schapira*, and *Major Pamela L. Jones* (on brief).

For Appellee: *Philip D. Cave*, Esq. (argued); *Andrew R. Britt,* Esq., and *Jonathan F. Potter*, Esq. (on brief).

Amicus Curiae for Appellee on behalf of the National Institute for Military Justice: *James A. Young*, Esq., and *Rachel E. VanLandingham*, Esq.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON and Judge HARDY joined. Judge SPARKS filed a separate opinion concurring in part, dissenting in part, and dissenting in the judgment, in which Senior Judge EFFRON joined.

———————

Judge MAGGS delivered the opinion of the Court.

In this certified case, we conclude that the military judge detailed to hear a post-trial motion for a mistrial did not abuse his discretion in denying the motion. We reverse the United States Army Court of Criminal Appeals (ACCA), which concluded otherwise. *United States v. Rudometkin*, No. ARMY 20180058, 2021 CCA LEXIS 596, at *1–2, 2021 WL 5235100, at *1 (A. Ct. Crim. App. Nov. 9, 2021) (unpublished).

## I. Background

In February 2018, at Redstone Arsenal in Alabama, Military Judge Richard J. Henry, sitting as a general court-martial, initially found Appellee guilty of three specifications of rape, two specifications of aggravated sexual assault, one specification of assault consummated by a battery, and three specifications of conduct unbecoming an officer and a gentleman (for committing adultery), in violation of Articles 120, 128, and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 933 (2006, Supp. IV 2007–2011, 2012). Testimony at trial showed that Appellee raped his first wife, LM, at their home in 1999, 2000, and 2007; that Appellee sexually assaulted his second wife, JH, at a hotel in the spring of 2011 and during a camping trip in the fall of 2011; that Appellee assaulted another woman, CL, by striking her twice in the face with his hand in 2014; and that Appellee had adulterous sexual relationships with LM, CL, and another woman, LL, while he was married to JH. Appellee testified at trial and admitted to engaging in the adulterous relationships. Military Judge Henry initially sentenced Appellee to confinement for twenty-five years and a dismissal.

In March 2018, before the convening authority took action, Military Judge Henry held a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session at which he dismissed two of the three rape specifications based on then-applicable precedent regarding the statute of limitations. Appellee moved to disqualify Military Judge Henry for resentencing but Military Judge Henry denied this motion. Acting pursuant to Rule for Courts-Martial (R.C.M.) 1102, Military Judge Henry resentenced Appellee to confinement for seventeen years and a dismissal.

In April 2018, Captain AC, filed a complaint with the Army Trial Defense Service against Military Judge Henry. The complaint alleged that Military Judge Henry was engaged in an inappropriate relationship with Captain AC's wife, Mrs. KC. At the time, Captain AC was a defense counsel assigned to the Trial Defense Service at Fort Benning, Georgia. Captain AC did not represent Appellee or have any connection to Appellee's case. Shortly afterward, the Army suspended Military Judge Henry from his position as a military judge. In June 2018, an investigation pursuant to Dep't of the

Army, Reg. 15-6, Legal Services, Military Justice para. 1-1 (Apr. 1, 2016), concluded that Military Judge Henry had engaged in an inappropriate relationship with Mrs. KC.

Later in June 2018, Military Judge Jeffrey R. Nance was detailed to a second post-trial session under Article 39(a), UCMJ. At this session, Military Judge Nance primarily considered matters not related to this appeal. But having recently learned of the complaint against Military Judge Henry, Appellee informed Military Judge Nance that he intended to file an additional motion alleging that Military Judge Henry's conduct had denied him a fair trial. Military Judge Nance stated that such a motion, if filed, would be handled in due course.

In July 2018, Appellee filed a written motion for a declaration of a mistrial under R.C.M. 915 and for an additional post-trial session under Article 39(a), UCMJ, at which to present evidence and argument. Appellee argued that Military Judge Henry's impartiality could be reasonably questioned given that his misconduct was similar to the adulterous misconduct for which he found Appellee guilty. The Government opposed the motion.

In September 2018, Military Judge Douglas K. Watkins was detailed to a post-trial Article 39(a), UCMJ, session to consider Appellee's motion. After hearing testimony from Captain AC, reviewing the report of the AR 15-6 investigation,[1] and considering the arguments of the parties, Military Judge Watkins issued a written order denying the motion for a mistrial. Military Judge Watkins found the following facts: Mrs. KC and Military Judge Henry had developed a deep friendship, they shared personal matters, they exchanged gifts, and they texted daily even into the late hours of the evening and during family trips. Mrs. KC attended yoga classes with Military Judge Henry, ate dinner or lunch with him on occasion, studied at the courthouse where he had his office,

---

[1] Military Judge Watkins relied on the report of the AR 15-6 investigation "not for its evidentiary value in [his] determination of whether [Military Judge] Henry engaged in an inappropriate conduct, but instead for its evidentiary value in analyzing the facts of this case under *Liljeberg v. Health Servs. Acquisition Corp.*, [486 U.S. 847 (1988)]," which this opinion discusses below.

went to the park with him, and once asked him to pick up her daughter at school. Mrs. KC also lied to her husband about her contacts with him. On one occasion, Captain AC discovered that Mrs. KC had inexplicably laundered the sheets in their house. Mrs. KC and Captain AC argued about her contacts with Military Judge Henry. Mrs. KC told Captain AC that she found Military Judge Henry attractive and that "if she were not married, her relationship with [Military Judge] Henry would be sexual." At one point, Captain AC asked Mrs. AC for a divorce because of her relationship with Military Judge Henry.

Military Judge Watkins could not find by a preponderance of the evidence that Military Judge Henry had committed adultery. But he concluded that the relationship between Military Judge Henry and Mrs. KC was still improper for three reasons. First, the relationship caused Captain AC to suspect adultery, interfered with Captain AC's marriage and family life, and made Captain AC worry about his ethical obligations. Second, even if the relationship did not involve adultery or fraternization, the relationship raised the same concerns as these offenses by having a divisive effect on good order and discipline, by bringing the service into disrepute, and by adversely affecting discipline, authority, and morale. Third, the relationship "created at least a reasonable perception that reflected adversely on his fitness to serve as a judge" because it could "cause reasonable persons to question [his] morality and fitness."

Military Judge Watkins saw the sole legal issue in the motion to be whether Appellee was entitled to relief and therefore announced that he would not rule on the questions of whether Military Judge Henry was fit for service as a military judge or should have recused himself. In deciding the question of relief, Military Judge Watkins followed the approach that this Court used in *United States v. Butcher*, 56 M.J. 87 (C.A.A.F. 2001). In *Butcher*, the Court "assume[d], without deciding, that the military judge should have disqualified himself and ask[ed] whether his failure to do so require[d] reversal under the standards set forth by the Supreme Court in *Liljeberg*." *Id.* at 92.

In *Liljeberg*, the Supreme Court considered three factors to determine if a remedy was warranted for a judge's failure

to recuse himself: (1) the "risk of injustice to the parties in the particular case"; (2) the "risk that the denial of relief will produce injustice in other cases"; and (3) the "risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. Addressing the first *Liljeberg* factor, Military Judge Watkins determined that any risk that Military Judge Henry would be biased against Appellee was "speculative" for five reasons:

> First of all, there is no evidence of partiality or bias in *this case*. CPT [AC] was never a member of the accused's defense team. There is no connection to the relationship between [Military Judge] Henry and Mrs. [KC] to the accused, other than a general similarity between some charged conduct. The record is devoid of any personal animosity between [Military Judge] Henry and the accused or antagonism or favoritism toward counsel. Second, [Military Judge] Henry was not aware he was suspected of adultery until after the trial and first post-trial session in this case. Third, recognizing from the above analysis that the suspicion of adultery can be as damaging as adultery itself, the Court finds that [it] is equally likely [Military Judge] Henry would treat the accused leniently, rather than harshly. Indeed, [Military Judge] Henry does not believe his relationship with Mrs. [KC] was improper. He therefore would have no reason to camouflage his conduct. Fourth, while the accused was convicted of and sentenced for adulterous behavior, the conduct pales in comparison to the charged Article 120 offenses. In comparing maximum punishments, degree of force, and other characteristics of the referred charges, the crux of this case was about rape and violence against women. Fifth, Defense does not attack the sufficiency of the evidence in the case, which might tend to support a finding that [Military Judge] Henry treated the accused harshly. Finally, after the first post-trial 39(a) session, [Military Judge] Henry reduced the accused's sentence to confinement by 8 years, or almost one-third.

(Footnote omitted.)

Addressing the second *Liljeberg* factor, Military Judge Watkins saw little risk that denying relief to Appellee would result in injustice in other cases:

> The fact that [Military Judge] Henry was sus-
> pended from the bench, was due to [complete his
> term of service and be assigned] out of the Judiciary
> a few months after the trial in this case, and was
> found to have committed misconduct in an adminis-
> trative investigation make it very unlikely that in-
> justices will occur in other cases because of [Military
> Judge] Henry's conduct. Further, there is no evi-
> dence that judicial misconduct in the Army is com-
> mon and that the judiciary must be sent a message
> by declaring a mistrial in this case.

Finally, addressing the third *Liljeberg* factor, Military
Judge Watkins said the following about the risk of undermin-
ing public confidence in the military justice system:

> While this case involved an intimate and suspi-
> cious personal relationship, it did not involve such a
> relationship with any party or interested person to
> the accused's trial. Members of the public do and
> should expect high moral character from its judici-
> ary. However, members of the public understand
> that judges are not without fault, and given the lack
> [of] a nexus between [Captain AC and Mrs. KC] and
> the accused, a reasonable member of the public,
> knowing all the facts and circumstances, to include
> not only this unique relationship, but the sentence,
> sentence reduction, and crux of the case as well,
> would not lose confidence in the justice system.

For these reasons, Military Judge Watkins denied Appellee's
motion for a mistrial.

On appeal, the ACCA ruled that Military Judge Henry
should have disqualified himself. *Rudometkin*, 2021 CCA
LEXIS 596, at \*15, 2021 WL 5235100, at \*6. The ACCA also
agreed with Military Judge Watkins's decision to use the
*Liljeberg* factors to determine whether Appellee was entitled
to relief. *Id.* at \*16, 2021 WL 5235100, at \*6. But the ACCA
reached a different conclusion from Military Judge Watkins
when applying those factors. The ACCA decided that, in this
case, "the third prong of *Liljeberg* is dispositive" and that
therefore it was "unnecessary to examine the case under the
first two factors." *Id.,* 2021 WL 5235100, at \*6. The ACCA
explained:

> In our view, a reasonable member of the public
> would lose confidence in the judicial process where

the presiding military judge fails to disclose that he is so intimately involved with the opposite-gendered spouse of a prosecutor in his jurisdiction that there is a belief he is engaging in an extra-marital affair while serving as a judge in a bench trial that involves similar charges of conduct unbecoming for engaging in openly adulterous relationships for which the military judge himself could have been charged.

*Id.* at \*18–19, 2021 WL 5235100, at \*7. On this reasoning, the ACCA set aside the findings and sentence and authorized a rehearing to be ordered by the same or a different convening authority. *Id.* at \*19, 2021 WL 5235100, at \*7.

The Judge Advocate General of the Army then certified two issues to this Court:

I. Whether the Army Court erred by not properly considering the military judge's post-trial 39(a) proceedings relating to [the accused]'s request for mistr[i]al.

II. Whether the military judge clearly abused his discretion when he did not grant a mistrial and found that relief was not warranted under *Liljeberg v. Health Services Corp.*, 486 U.S. 847 (1988).

## II. Discussion

### A. Applicable Standard of Review

In assessing Military Judge Watkins's ruling, the ACCA was unsure whether it should apply the plain error standard of review or the abuse of discretion standard of review. The ACCA noted that in *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011), this Court held that "[w]hen an appellant . . . does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *Rudometkin*, 2021 CCA LEXIS 596, at \*9, 2021 WL 5235100, at \*4 (internal quotation marks omitted) (citation omitted). The ACCA thought that this case was analogous to *Martinez* because Appellee "did not challenge [Military Judge] Henry until after his trial," and the ACCA therefore applied the plain error standard of review. *Id.* at \*9 n.6, 2021 WL 5235100, at \*4 n.6. In a brief footnote, however, the ACCA stated that "even reviewing this case under an abuse of discretion standard, [it] would come to the same result." *Id.,* 2021 WL 5235100, at \*4 n.6.

The general rule is that a military judge's determination on a mistrial will not be reversed absent clear evidence of an abuse of discretion. *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003). The Government argues that *Diaz* applies, even in a case like this, when a military judge makes a ruling on a mistrial motion at a post-trial session under Article 39(a), UCMJ. In contrast, Appellee *initially* asserts in his brief that any post-trial motion made after the court has adjourned should be reviewed "as if 'on appeal.'" But Appellee *later* specifically states in his brief that he agrees with the Government that *Diaz* applies here.

We agree with the Government that *Diaz* applies and requires us to apply the abuse of discretion standard of review. In *Diaz*, this Court noted that this "deference to the military judge's decision on a mistrial is consistent with other federal practice." 59 M.J. at 90. This Court further explained that deference was warranted because an "'appellate panel, informed by a cold record,'" usually does not have the "'superior point of vantage'" of the military judge. *Id.* (quoting *United States v. Freeman*, 208 F.3d 332, 339 (1st Cir. 2000)). And in fact, this Court previously applied the abuse of discretion standard when reviewing a post-trial motion for a mistrial in at least one instance. *See United States v. Commisso*, 76 M.J. 315, 318 (C.A.A.F. 2017). Given that neither party alleges that Appellee's motion for a mistrial was untimely or otherwise improperly filed in this case, we see no reason to depart from the abuse of discretion standard here.

## B. Applicable Legal Rules

The R.C.M. contain rules that specifically address the disqualification of military judges and the decision whether to declare a mistrial. R.C.M. 902(a) requires a "military judge [to] disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 915(a) provides that a military judge may declare a mistrial when "manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings."

The parties disagree about whether we should rule on the issue of disqualification under R.C.M. 902 in this appeal. The

Government does not concede that Military Judge Henry should have disqualified himself but contends that we need not decide the issue. In contrast, Appellee agrees with the ACCA's conclusion that Military Judge Henry should have disqualified himself.

This Court confronted a similar situation in *Butcher*. In that case, while the members were deliberating, the trial defense counsel moved for a mistrial on grounds that the military judge had socialized with and had played tennis with trial counsel. 56 M.J. at 89. The military judge ultimately denied the motion four months after the court-martial had adjudged the sentence. *Id.* at 90. On appeal to this Court, the appellant argued that the military judge should have disqualified himself under R.C.M. 902(a), but the government disagreed. *Id.* at 92. In reviewing the case, this Court simply assumed, without deciding, that the military judge should have disqualified himself. *Id.* The Court then considered whether his failure to disqualify himself required reversal under the *Liljeberg* factors. *Id.*

We will follow the *Butcher* approach here. We will assume without deciding that Military Judge Henry should have disqualified himself. We see no need to decide a preliminary issue when we can avoid doing so by assuming the answer. *United States v. Ediger*, 68 M.J. 243, 250 (C.A.A.F. 2010) (deciding to assume the answer to an issue when the case could be decided without actually resolving it). As Military Judge Watkins explained: "With the trial concluded, the sole question before this Court [is] that of [the] relief due the accused."

The Government and Appellee agree with Military Judge Watkins and the ACCA that Appellee's right to relief depends on the *Liljeberg* factors described above. They disagree, however, about the application of those factors. Based on the standard of review described above and our assumption that Military Judge Henry should have recused himself, the only question that we need to decide is whether Military Judge Watkins abused his discretion in deciding not to grant a mistrial.

But before turning to that question, we note that the National Institute for Military Justice (NIMJ), as amicus curiae,

argues at length that courts should not use the *Liljeberg* factors in a criminal case because *Liljeberg* was a civil case that involved different considerations. Although NIMJ recognizes that this Court applied the *Liljeberg* factors in *Butcher*, it argues that we should overrule that precedent. Given that the parties in this case have not challenged *Butcher*, we decline to address the arguments raised by NIMJ in its amicus brief. *See United States v. Long*, 81 M.J. 362, 370 (C.A.A.F. 2021) (following precedent when both parties agree that it states the appropriate test); *see also FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 n.4 (2013) ("Because this [amicus] argument was not raised by the parties or passed on by the lower courts, we do not consider it.").

## C. Application of the Abuse of Discretion Standard

A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record, *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010); (2) the military judge uses incorrect legal principles, *id.*; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable, *id.*; or (4) the military judge fails to consider important facts. *See United States v. Solomon*, 72 M.J. 176, 180–81 (C.A.A.F. 2013). In *Diaz*, as described above, this Court required "clear evidence" of an abuse of discretion before overturning a military judge's ruling on a mistrial motion. 59 M.J. at 90.

In this case, Appellee faults Military Judge Watkins for not sufficiently considering some important facts and for applying the law in a clearly unreasonable way. In support of his position, Appellee focuses on the third *Liljeberg* factor, which is the "risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. On this point, Appellee's principal argument is that Military Judge Watkins did not "fully address [Military Judge] Henry's alleged adultery or 'improper relationship,' . . . against Appellee's alleged offenses," whereas the ACCA made "the nature and similarity of the allegations . . . a core reason" for its decision with respect to the third *Liljeberg* factor. Appellee also asserts that Military Judge Watkins "did not consider the number and breadth of cases over which [Military Judge] Henry presided."

In assessing these two arguments, we agree that the ACCA gave more weight to the similarity of Military Judge Henry's misconduct to Appellee's misconduct in applying the third *Liljeberg* factor. But we note that Military Judge Watkins carefully took the similarity of the two offenses into account when applying the first factor, recognizing the "general similarity between some [of the] charged conduct." In so doing, he emphasized that Military Judge Henry was not aware that he was suspected of adultery until after the trial and first post-trial session in this case. In applying the second factor, Military Judge Watkins concluded that the administrative investigation into Military Judge Henry's conduct made it "very unlikely that injustices will occur in other cases." In applying the third *Liljeberg* factor, Military Judge Watkins reasoned that fully informed members would agree. We concur in Military Judge Watkins's assessment of this point.

Appellee separately argues that this Court should "give deference" to the ACCA's determination that Military Judge Watkins abused his discretion in applying the third *Liljeberg* factor. Appellee emphasizes that the ACCA judges were already familiar with several cases arising out of Military Judge Henry's misconduct. Appellee also contends that the Court should give greater weight to the ACCA's review because that court has "broad discretion in conducting its Article 66(c) review" (internal quotation marks omitted) (citation omitted), and deference to Military Judge Watkins "cannot be so great as to substitute his judgment for that of a court of criminal appeals exercising its Article 66 power."

On this point, we acknowledge that assessing the "risk of undermining the public's confidence in the judicial process" is difficult for any judge because the decision turns upon an estimation of what an informed, reasonable person would think. But we reject Appellee's position. The question before us, as explained above, is whether Military Judge Watkins abused his discretion. Military Judge Watkins had to make his decision based on the record before him and the appellate judges must decide whether Military Judge Watkins abused his discretion based on the same record. We conclude that he applied his discretion correctly.

Military Judge Watkins recognized that Military Judge Henry had engaged in an inappropriate relationship and assumed that Military Judge Henry should have disqualified himself. The motion before Military Judge Watkins asked him to grant a mistrial. Weighing all evidence before him and applying this Court's precedent, he denied the motion. Military Judge Watkins concluded that "a reasonable member of the public, knowing all the facts and circumstances, to include not only this unique relationship, but the sentence, sentence reduction, and crux of the case as well, would not lose confidence in the justice system." We cannot say that the decision by Military Judge Watkins to deny the post-trial mistrial motion was a clear abuse of discretion.

### III. Conclusion

The first certified question is answered in the affirmative. The second certified question is answered in the negative. The decision of the United States Army Court of Criminal Appeals is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for a further review under Article 66, UCMJ, 10 U.S.C. 866 (2018).

Judge SPARKS, with whom Senior Judge EFFRON joins, concurring in part, dissenting in part, and dissenting in the judgment.

I concur with the majority on the resolution of the first certified issue. However, I dissent with respect to the resolution of the second certified issue and with the decision to reverse the United States Army Court of Criminal Appeals decision to set aside the findings and sentence.

Rule for Courts-Martial (R.C.M.) 902(a) states that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Throughout our case law, there is repeated emphasis on not just actual impartiality but also the appearance of impartiality. In *United States v. Butcher*, we stated that R.C.M. 902(a) was enacted "to maintain public confidence in the judicial system by avoiding even the appearance of partiality." 56 M.J. 87, 90 (C.A.A.F. 2001) (internal quotation marks omitted). "The appearance standard helps to enhance confidence in the fairness of the proceedings because in matters of bias, the line between appearance and reality is often barely discernible." *Id.* "[T]he validity of the military justice system and the integrity of the court-martial process depend[] on the impartiality of military judges in fact and in appearance. Therefore, actual bias is not required; an *appearance* of bias is sufficient to disqualify a military judge." *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) (second alteration in original) (citations omitted) (internal quotation marks omitted). "Recusal based on an appearance of bias is intended to promote public confidence in the integrity of the judicial process." *United States v. Sullivan*, 74 M.J. 448, 453–54 (C.A.A.F. 2015) (internal quotation marks omitted) (quoting *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012)).

This Court has established "that the appearance standard does not require judges to live in an environment sealed off from the outside world." *Butcher*, 56 M.J. at 91. It is not per se problematic when there are professional and social relationships within the military justice community. Rather, an inquiry should focus on "whether the relationship between a military judge and a party raises *special* concerns, whether the relationship was *so close or unusual* as to be problematic,

*United States v. Rudometkin* No. 22-0105/AR
Judge SPARKS, concurring in part, dissenting in part,
and dissenting in the judgment

and/or whether the association *exceeds* what might rea*sonably be expected* in light of the [normal] associational activities of an ordinary [military] judge." *Uribe*, 80 M.J. at 447 (alterations in original) (citations omitted) (internal quotation marks omitted).[1]

Here, Military Judge Watkins's findings reveal a relationship between Military Judge Henry and Mrs. KC that stretched far beyond the casual social encounters involved in *Butcher*, which included the military judge and trial counsel playing tennis and attending a party together. 56 M.J. at 89. They even exceed the situation in *Uribe*, where this Court determined the military judge should have recused himself because trial counsel attended the military judge's bachelor party and wedding, and his girlfriend was present at the birth of the military judge's children. 80 M.J. at 447–448. Military Judge Watkins called the relationship between Military Judge Henry and Mrs. KC "pervasive, personal, secretive, and intimate" and found it was suspicious in nature. Though he could not conclude by a preponderance of the evidence that Military Judge Henry committed adultery, Military Judge Watkins's findings certainly imply that this could have been the case. Mrs. KC lied to her husband about spending time with Military Judge Henry. She became extremely secretive about her communications with Military Judge Henry, including changing her social media passwords and refusing to share any of their text messages with her husband. At one point, when her husband went out of town with their children, he returned home to find that Mrs. KC had washed the sheets in their bedroom even though they had just been changed and no other dirty laundry had been washed.

Even without finding actual adultery, Military Judge Watkins determined that the relationship was improper. He concluded that it was disruptive enough to affect good order and discipline and could have potentially led to criminal prosecution. In addition, he stated that Military Judge Henry's conduct implicated many of the dangers the military justice

---

[1] Mrs. KC is obviously not a party to a court-martial. However, the relationship in this case raises the same concerns.

*United States v. Rudometkin* No. 22-0105/AR
Judge SPARKS, concurring in part, dissenting in part,
and dissenting in the judgment

system had in mind when it criminalized adultery and fraternization. He concluded that such conduct "could cause reasonable persons to question the morality and fitness of a judge." Given Military Judge Watkins's findings, it is clear to me that Military Judge Henry abandoned his responsibilities as a military judge and military officer and that this Court would be remiss in not stating outright that he should have recused himself from his judicial duties.

However, as the majority properly recognizes, a determination that a military judge should have disqualified himself or herself does not end appellate review. *Butcher*, 56 M.J. at 92. "Neither RCM 902(a) nor applicable federal civilian standards mandate a particular remedy for situations in which an appellate court determines that the military judge should have removed himself or herself from a case." *Id.* (internal quotation marks omitted). This Court has turned to the three factors set out by the United States Supreme Court in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1987), to determine whether a military judge's failure to disqualify him or herself should result in a reversal.[2] *Butcher*, 56 M.J. at 92.

The first *Liljeberg* factor requires that we evaluate "the risk of injustice to the parties in the particular case." 486 U.S. at 864. In his discussion of the first factor, Military Judge Watkins did not address the risk of injustice with respect to Appellee's decision to waive his right to trial by members. In the military justice system, the members of the court-martial serve a function similar to a civilian jury, with broad discretion to adjudicate the findings by determining whether the evidence has demonstrated the guilt of the accused beyond a reasonable doubt. *See* Article 51(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 851(c) (2012); R.C.M. 920(e). Under the law applicable at the time of the trial, members of the court-martial also served as the sentencing authority, with

---

[2] I have read and considered the amicus argument that this Court should stop using the *Liljeberg* factors. However, I am not persuaded that there is good cause to abandon our existing precedent.

*United States v. Rudometkin* No. 22-0105/AR
Judge SPARKS, concurring in part, dissenting in part,
and dissenting in the judgment

broad discretion to impose punishment, subject to the maximum punishment and other pertinent limitations. *See* R.C.M. 1002; R.C.M. 1003.

In a non-capital case, the accused may waive the right to trial by members by submitting a request for a military judge-alone trial. *See* Article 16(1)(B) UCMJ, 10 U.S.C. § 816(1)(B) (2012); R.C.M. 903. If the request is granted, the military judge rather than the members then exercises the broad discretion of the factfinder, weighing the evidence, assessing credibility, and determining whether the evidence establishes guilt beyond a reasonable doubt. Likewise, under the law applicable to the present case, the military judge rather than the members would exercise broad discretion to fashion the sentence.

The right to trial by members can be waived, but only if the waiver is knowing and voluntary. *United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012). To ensure that the accused makes an informed decision regarding waiver of the right to trial by members, Article 16, UCMJ, expressly requires that the accused consult with counsel about the choice. Article 16(1)(B), UCMJ. As noted in the nonbinding discussion accompanying R.C.M. 903(c)(2)(A): "Ordinarily the military judge should inquire personally of the accused to ensure that the accused's waiver of the right to trial by members is knowing and understanding . . . . Failure to do so is not error, however, where such knowledge and understanding otherwise appear on the record."

In this case, the record does not reflect such knowledge and understanding. There is no indication that Appellee was aware of Military Judge Henry's relationship with Mrs. KC. The record contains an assurance by Military Judge Henry that he was "properly certified and sworn" and that he was not "aware of any matter that might be a ground for challenge against me." The routine inquiry of the accused by Military Judge Henry regarding the voluntariness of the request for a military judge-alone trial and consultation with counsel provided no indication that there was any matter about which the accused or counsel should be concerned.

*United States v. Rudometkin* No. 22-0105/AR
Judge SPARKS, concurring in part, dissenting in part,
and dissenting in the judgment

If information that "could cause reasonable persons to question the morality and fitness of a judge" was not provided to Appellee and counsel when contemplating a request for a military judge-alone trial, it follows that a forum selection was made without meaningful discussion of facts critical to reaching an informed decision about waiving a fundamental right. Under such circumstances, the risk of material prejudice to the substantial rights of the accused requires remedial action in the form of a rehearing on both the findings and the sentence. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2012).

The considerations warranting relief under the first *Liljeberg* factor also implicate the third factor, "the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. "We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice." *Id.* (internal quotation marks omitted) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). It is hard to imagine the public not harboring serious doubts about a case where the verdict was reached by a military judge whose conduct would cause reasonable persons to question his morality and fitness and where Appellee chose a military judge-alone trial without access to information regarding such conduct.

Given these concerns, I respectfully dissent.